## THE PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* JEROME MADDEN *v.* WILLIAM C. STRATTON.

PLEADINGS IN QUO WARRANTO.—The defendant in an action to try the right to an office may set forth in his answer more than one defense.

LIMITATION OF DURATION OF AN OFFICE.—The Constitution does not prohibit an office created by the Legislature from continuing over four years, but merely limits the incumbent's term which he holds by election or appointment to four years.

RIGHT OF INCUMBENT TO HOLD AN OFFICE AFTER EXPIRATION OF HIS TERM.—The incumbent of an office created by the Legislature, who has been elected or appointed to the same, notwithstanding the expiration of the term for which he was elected or appointed, continues to hold the office until a successor has been duly elected or appointed.

VACANCY IN OFFICE.—When a mode of filling a vacancy in an office is provided by law, other than by the appointment of the Governor, the Governor has no power to fill such vacancy by his appointment.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

On the 8th day of March, 1865, four of the Trustees of the State Library held a meeting and ballotted for a Librarian, but failed to elect, their votes being equally divided between two candidates. The Board adjourned without any change in the vote, and made no further effort to elect. The Governor, assuming that the expiration of Stratton's term and the failure of the Board to elect ‾      a vacancy in the office, on the 22d day of April,          ited the relator to fill the

supposed vacancy. Relator then demanded that Stratton surrender up the office, and upon his refusal to do so, commenced the present action.

The law organizing the State Library made the Board of Trustees to consist of five members. The Governor and Chief Justice were *ex officio* members of the Board. The Chief Justice did not meet with the Board on the 8th of March, 1865. The Governor and one other Trustee voted for J. L. Perkins, and the other two voted for defendant.

Defendant immediately qualified, and in his answer as a separate defense set up that by Section twelve of Article V of the Constitution, the Governor was disqualified from acting as Trustee, and that as the three legal Trustees who voted constituted a quorum of the Board, and he received two votes, a majority of the three, he was re-elected for a new term of four years.

The Court below gave judgment that the defendant was guilty of usurping the office and that he be excluded from it, and that relator was entitled to the office.

Defendant appealed.

The other facts are stated in the opinion of the Court.

*E. W. F. Sloan,* for Appellant.

The office of Librarian had not become vacant, upon the supposition that the Trustees failed to elect a successor, on the 8th of March, 1865. The right of the incumbent to hold the office until the election and qualification of a successor results from a rule of the common law founded on public necessity. (*State* v. *Lusk,* 18 Miss. 336, 339; *Commonwealth* v. *Hawley,* 9 Barr, 516, 518.) The wisdom of the rule has been recognized in the organic law of this State by incorporating the rule itself into its own structure. (*People* v. *Oulton, ante* 44.)

It remains to be seen whether the relator is a duly elected and qualified successor. He claims title to the office solely by *executive* appointment. It is provided by the Constitution, Article V, Section eight:

"When any office shall, from any cause, become vacant, and no mode is provided by the Constitution and law for filling such vacancy, the Governor shall have power to fill such vacancy by granting. a commission, which shall expire at the end of the next session of the Legislature, or at the next election by the people."

The lawful exercise of the power depends upon the concurrence of two circumstances : First, *the office must have become vacant;* second, *there must be no other lawful mode of filling the vacancy.*. Neither of these existed.

First—There was no vacancy in the office of Librarian. Section twenty-three of the Act of 1863, "concerning offices," provides that : "Every office shall become vacant upon the happening of either of the following events before the expiration of the term of such office : First, the death or resignation of the incumbent," etc.

A failure to elect is not one of the events mentioned in the section.

*George Cadwalader*, for Respondent.

Conceding that Stratton might hold over, he could only do so up to the time the Attorney-General filed this information. A State might never see fit to fill an office, or the property of the office might be destroyed, still the original appointee could not claim that the contract of the State was to keep him until his successor was appointed. The contract of the State is for the term expressed in the commission—no longer. Hence Stratton must yield his office, though the relator has no title to it. It is the primary duty of the Court under section three hundred and twelve, to determine the right of the defendant to the office. This suit is between the people of the State and the defendant. The relator is only an adjunct. The defendant can gain nothing from the weakness of the relator's title. (*People* v. *Abbott*, 16 Cal. 358.)

In *Gano* v. *The State*, 10 Ohio, N. S. 237, it was declared competent for the Court to oust the usurper without determin-

ing the right of the claimant. Our Constitution has given to the Governor the power to fill all vacancies in office until such a time as the original appointing power acts, and this has been the uniform construction placed by this Court upon Section eight of Article V.

The words in the section, " *and no mode is provided in the Constitution and laws for filling such vacancy,*" have been construed to mean that the appointing authority have failed or neglected to fill such vacancy; and this interpretation is not an unjust one, because it is a safeguard to the State and insures the performance of all State functions, and the operation of all laws. Divest the Governor of such authority, and if the incumbent of an office retires at the end of his term, there would be an office without an officer.

The first case is that of *The People* v. *Mott*, decided by the first Chief Justice of this State. The report thereof appears in the appendix to the third volume of California Reports. (*People* v. *Baine*, 6 Cal. 510; *People* v. *Reid*, 6 Cal. 288; *People* v. *Mizner*, 7 Cal. 523; *Brooks* v. *Meloney*, 15 Cal. 58.)

By the Court, CURREY, J.

This is an information in the nature of a *quo warranto*, having for its object—first, the exclusion of the defendant from the office of Librarian of the State Library; and second, the investiture of the relator with the rights, privileges and franchises thereof.

The defendant was appointed to the office on the 16th of March, 1861, for the term of four years, and became duly qualified two days thereafter. Since that time, until issue was joined in this proceeding, he has exercised such office and been in the enjoyment of its privileges, franchises and emoluments.

On the 22d of April of the present year, the Governor of the State, assuming that the office was vacant, by reason of the failure of the Board of Trustees of the State Library to elect a successor to the defendant, appointed and commissioned

the relator to hold the office of Librarian of the State Library until the Board of Trustees should elect his successor. On the day of his appointment, the relator took the constitutional oath, filed his official bond, and thereupon demanded of the defendant a surrender of the office. The defendant refused to comply with the demand, whereupon this action was brought.

The case was submitted to the District Court upon the pleadings, and on the 12th of May judgment was rendered, ousting and excluding the defendant from the office, its franchises and privileges, and it was further adjudged that the relator was entitled to said office, and to all its rights, privileges and franchises, and he was declared to be "the legal and rightful occupant of said office of Librarian of the State Library."

This judgment the defendant, who has appealed, insists is erroneous on the following grounds:

1. Because there was no vacancy in the office of Librarian to be filled by Executive appointment.

2. Because the appellant, at the time of the relator's appointment, was, and still is, lawfully holding said office, and is justly entitled to all its rights, privileges and franchises.

The first duty which the Court has to perform is to determine as to the right of the defendant to the office under the circumstances disclosed by the pleadings of the parties. (Practice Act, Sec. 312.) By the information, it is alleged in terms that during all the time since the 18th of March last, the defendant has usurped, intruded into, and unlawfully held the office of State Librarian, and during all such time has exercised the liberties, privileges and franchises thereof against the dignity of the State and to the damage and prejudice of the relator.

The information sets forth that the defendant was duly appointed on the 16th of March, 1861, to fill the office of State Librarian for the period of four years, and that he became duly qualified and entered upon the discharge of its duties on the 18th of the same month. The defendant admits in his answer this averment, and immediately thereupon avers

that ever since the last mentioned day he has " continued to fill said office and- exercise the functions thereof, under the laws of said State, of his own proper right.    That at no time has there been a vacancy in said office of Librarian since defendant so entered upon the same."   He then further answers, claiming that since the 18th of March last he has lawfully exercised the office of Librarian by virtue of his appointment to it by the Board of Trustees of the State Library, on the 8th of March, 1865.    In reference to this branch of the answer, the facts stated and the position of the parties are in substance the same as appear in the case of *Stratton* v. *Oulton,* *ante* 44, and therefore need not be repeated in this place.

The counsel for the people and relator insist that the defendant's right to the office can be maintained under the pleadings in this case only on the ground that he was duly elected or appointed Librarian by the Board of Trustees in March last. In our opinion the defendant may also rely upon the facts which are admitted by the pleadings.   That if he has a right in fact to exercise the office under the circumstances stated in the complaint and admitted by the answer, he is not precluded from relying on the circumstances so alleged and admitted, though he claims title to the office by virtue of an alleged appointment thereto by the Board of Trustees, in March, 1865.   In short, in pleading he was at liberty to set forth by answer as many defenses as he had.   (Practice Act, Sec. 49.)

In considering the case we shall dispense with any further reference to the appointment of defendant as Librarian, assumed by him to have been made by the Trustees in March, 1865.

I. The ground on which it is claimed the defendant is a usurper of and intruder into the office is, that the term for which he was appointed in March, 1861, had expired when this action was commenced, and that under the Constitution his lawful continuance in the office and in the exercise of the functions belonging to it beyond the term of four years was and still is an impossibility.

Section seven of Article XI of the Constitution is as follows :

" When the duration of any office is not provided for by this Constitution, it may be declared by law, and if not so declared such office shall be held during the pleasure of the authority making the appointment; nor shall the duration of any office not fixed by this Constitution ever exceed four years."

In the abstract, " office " signifies a place of trust. In legal idea, an office is an entity, and may exist in fact, though it be without an incumbent. In this sense the word " office " is used in a number of instances in the Constitution and also in the statutes. An office is also defined to be a right to exercise a public function or employment, and to take the fees and emoluments belonging to it. (*Miller* v. *Supervisors, etc.,* 25 Cal. 98.) The section of the Constitution quoted declares that the duration of any office not fixed by the Constitution shall never exceed four years. This does not mean that the office shall cease to exist after the constitutional limit declared has expired; but the word " duration " evidently means the term which may be fixed by the constituting authority as the limit beyond which the incumbent's right by election or appointment to the office shall not extend. The constitutional inhibition operates as a total restraint to the creation of a term of office by election or appointment of longer duration than four years. So when, by an Act of the Legislature, an office is created and provision is made for filling it with a person who shall be invested with the right and authority to perform the functions belonging to it, for the period, for instance, of two years, the term thus prescribed is limited by a law of as binding obligation as the Constitution itself, provided it is in no sense repugnant to the organic law; and the incumbent's term is complete and at an end upon the expiration of the time prescribed for its duration. But notwithstanding the incumbent's term in such case be at an end by lapse of time, it is not to be gainsayed that he may remain in the exercise of the duties of the office as its *locum tenens* until his successor is elected or appointed. In such case he holds the position not as the incumbent by election or appointment, but because the public necessities require that the office shall not be with-

out a person in its possession having authority to perform the duties appertaining to it. This continuance in office is not an extension of the term where the term is expressly limited, though it is an incumbrance by sufferance for the public convenience, subject to be determined whenever the proper authority may act effectively. Now whether the term of office be two years or four years we apprehend can make no difference. In the latter case, as well as in the former, he who was the incumbent of the term expired is permitted to remain in office, invested with it as its *locum tenens,* until a successor is authorized to enter into and upon the discharge of its functions, because the public necessities demand that the duties of the office should be duly administered. (*Stratton* v. *Oulton, ante* 44, and the cases therein cited.) The views above expressed in our judgment are in no sense opposed to the letter or spirit of the seventh section of the eleventh Article of the Constitution, but in harmony with it.

II. In the next place was the office of Librarian vacant to a legal intent when the relator was appointed to it by the Governor, or when this action was commenced? And if it was so vacant was there no mode provided by the Constitution or any law of the State for filling the vacancy otherwise than by executive appointment?

Section eight of Article V of the Constitution reads as follows : " When any office shall from any cause become vacant, and no mode is provided by the Constitution and law for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election by the people."

The defendant, as the occupant of the office of Librarian of the State Library, held the position provisionally—that is, subject to be superseded by the appointment by the proper authority of another person to the office. In a restricted and technical sense, perhaps it may be said the office was vacant— that is, without an incumbent whose tenure was by lawful appointment and subject to no condition or qualifications.

Then, if in the sense suggested, the office of Librarian was vacant at the time the relator was appointed to it, it must be ascertained that there was no other mode than by executive appointment provided by the Constitution or by the law for filling such vacancy before it can be admitted that the Governor had the power to grant a commission to the relator or to any other person. By the Act of 1861, entitled " An Act prescribing rules for the government of the State Library," (Laws 1861, p. 45,) a mode was and still is provided for appointing a successor to the defendant. The power of appointment in this instance was conferred by the statute upon the Board of Trustees of the State Library. This duty was cast upon them for the reason, we may suppose, that the library was placed by the law under their direction and control, and they must be deemed the best judges of the qualifications and fitness of the person to whom should be intrusted the important and delicate duties of Librarian. Thus it appears that a mode for filling the office of Librarian was provided by law otherwise than by executive appointment.

The condition on which the exercise of the power of the Governor to appoint a successor to the defendant is made to depend by the Constitution did not exist, and therefore the commission granted to the relator was without authority and void.

At the time of the commencement of this action the defendant was in fact holding the office of Librarian, and performing the functions appertaining to it. In *Stratton v. Oulton, ante* 44, we held that he was Librarian *de jure*, notwithstanding the term for which he was appointed had expired. The reasons for the conclusion to which we came on the subject are stated in full in the opinion of the Court, and seem to us strongly fortified by the authorities, both English and American, therein referred to. It is said in that case that " the rule of the common law, as settled by the case cited, conserves the public good by conserving the methods and instrumentalities by which alone public business can be transacted; while the opposite rule, when pushed to its consequences, might result in a suspension

of business in every department of the public service." We may say, at the risk of repeating what has been said in substance already, that the rule which continues an incumbent in office until his successor is duly elected and qualified, is to prevent any interregnum in the office, and to have some person always authorized to discharge its duties. The incumbent's right in such case results from a rule of the common law founded on public necessity; therefore, it is the defendant's right to hold the office until all has been done which is required by law to give another title to it.

The defendant came into the office by lawful authority, and by the terms of his appointment held the place for four years. To his appointment and incumbency, and to the failure of an election and qualification of a successor, and to the rule of the common law to which reference is made, must be referred the defendant's right to continue in the exercise of the office and the performance of its duties until his successor shall be appointed and qualified as provided by law. When a successor shall be thus appointed and qualified, and the defendant shall be called upon to give place to him, then his tenure *de jure* will cease to exist.

The judgment of the District Court must be and is hereby reversed; and, further, the District Court is directed to enter judgment in favor of the defendant, dismissing the information and the complaint of the relator, with costs, etc.

Mr. Chief Justice SANDERSON expressed no opinion.

SAWYER, J., concurring specially.

I concur in the views expressed by Mr. Justice Currey, and add a suggestion upon one point. The relator claims the position under an appointment from the Governor, who assumed to act under Section eight, Article V, of the Constitution, which authorizes the Governor to make an appointment, " when any office shall become vacant, and no mode is provided by the Constitution and laws for filling such vacancy."

But the Act of 1861 gives the appointing power to the Board of Trustees; hence there is a mode provided by law for filling any vacancy that may exist. This Board could at all times, and still can, at its own pleasure, meet and appoint a Librarian. This body is still in'existence, and nothing but the volition of the members can for a moment delay an appointment. It matters not that it does not adjourn from day to day, for it can meet at any time irrespective of adjournments. Had the Board met and failed to elect, and then adjourned for an hour to consider the matter, or for any other purpose, I apprehend that no one would claim that the Governor could, during the recess, fill the vacancy, and thus take the appointment out of the hands of the regularly authorized appointing power. Yet the functions of the body authorized by law to fill the vacancy are no more suspended now than they would be during the recess of an hour, because they can meet at any moment when it suits their convenience or pleasure to do so. The case might be otherwise, where the body, when once dissolved, could not be re-organized except at the will or call of another not a member—such as the Legislature. Such were the cases of *People* v. *Baine*, 6 Cal. 510; *People* v. *Reid*, 6 Cal. 289; *People* v. *Mizner*, 7 Cal. 522. The reason in that instance is, that the body when once adjourned *sine die*, so far as its own volition is concerned, is incapable of performing any further functions. There was then a mode of filling the vacancy provided by law in existence at the time the appointment of the relator was made, and the conditions upon which the Governor was authorized. to act did not exist.

These views are supported by the cases of *People* v. *Fitch*, 1 Cal. 536; *People* v. *Mizner*, 7 Cal. 523.