[Civ. No. 3836. Second Appellate District, Division Two.—May 18, 1922.]

W. A. FOUCHT et al., Petitioners, v. W. J. HIRNI, County Auditor, etc., Respondent.

[1] COUNTIES—ASSISTANTS TO COUNTY OFFICERS—TIMES OF EMERGENCY — PURPOSE OF CODE PROVISION. — Section 4041c of the Political Code, authorizing the board of supervisors of a county to provide for additional assistance to any county officer when necessary for the expeditious transaction of the business of the office, does not contemplate the creation of a public office, but a temporary and occasional employment under contract in times when the county is confronted with emergent situations.

[2] ID.—APPOINTEE NOT A DEPUTY OFFICER.—An assistant to a county officer employed by a board of supervisors under section 4041c of the Political Code is not to be regarded as a deputy.

[3] ID.—ASSISTANT TO COUNTY TREASURER — CONSTITUTIONAL LAW — COMPENSATION NOT INCREASED. — The employment under section 4041c of the Political Code of a person to assist a treasurer of a county for a temporary period does not create an increase in the officer's compensation in violation of section 9 of article XI of the constitution, where such officer receives a fixed salary for his own services and his deputies and assistants are likewise allowed fixed salaries.

[4] ID. — LUMP SUM SYSTEM OF COMPENSATION — SECTION 4041C, POLITICAL CODE—WHEN OPERATIVE.—In counties where officers are allowed a gross sum out of which to compensate themselves for their own personal services and likewise to pay the salaries of deputies and assistants, section 4041c of the Political Code is not available for the employment of an assistant until the expiration of the terms of those officers who were elected before the code section went into effect in 1921.

[5] ID.—CODE PROVISION—UNIFORMITY OF OPERATION—CONSTITUTIONAL LAW.—Section 4041c of the Political Code, which on its face is applicable alike and immediately to every county in the state, does not lack the uniformity of operation required by section 11 of article I of the constitution because it is immediately operative in counties where salaries of officers and deputies are fixed, while in the other class its operation is temporarily deferred by the constitution itself by reason of the inhibition against any increase of a county officer's compensation after his election or during his term of office.

[6] ID.—UNIFORMITY OF SYSTEM OF COUNTY GOVERNMENT—CONSTITUTIONAL LAW — PROVISION NOT VIOLATED. — Section 4041c of the Political Code is not inconsistent with the uniformity required by section 4 of article XI of the constitution that the legislature shall establish a system of county governments which shall be uniform throughout the state, because its operation does not commence synchronously in all the counties of the state.

[7] ID.—DUTIES AND TERMS OF COUNTY OFFICERS—FIXING BY LEGISLATURE BY UNIFORM LAWS—CONSTITUTIONAL LAW.—Section 4041c of the Political Code is not in conflict with section 5 of article XI of the constitution, whereby it is provided that the legislature shall by general and uniform laws prescribe the duties and fix the terms of all county officers, since an assistant employed under such section has no term of office and is not a county officer, but a mere servant or employee of the board of supervisors temporarily employed to meet an emergent situation.

[8] ID.—SPECIAL LAW PROVISION NOT VIOLATED.—Section 4041c of the Political Code is not violative of subdivision 28 of section 25 of article IV of the constitution, providing that the legislature shall

not pass local or special laws creating offices or prescribing the powers or duties of officers, since the section does not attempt to create an office and is not a local or special law.

[9] ID.—CONTROL AND APPROPRIATION OF COUNTY MONEYS—PROHIBITED PROVISION NOT VIOLATED.—Section 4041c of the Political Code is not violative of section 13 of article XI of the constitution, which prohibits the legislature from delegating the power to control or appropriate county moneys.

APPLICATION for a Writ of Mandamus to compel the issuance of a warrant for services of additional assistant to a county treasurer. Granted.

The facts are stated in the opinion of the court.

W. W. Middlecoff for Petitioners.

Bradley & Bradley for Respondent.

FINLAYSON, P. J.—This is an application for a writ of mandate to compel respondent, as auditor of Tulare County, to issue to the petitioner Foucht a warrant for $182, claimed to be due the latter as compensation for certain work done by him in assisting the county treasurer under a contract of employment made by him with the board of supervisors pursuant to section 4041c of the Political Code —a new section added in 1921. (Stats. 1921, p. 220.) Respondent, who has demurred to the petition, attacks the constitutionality of this code section upon a number of grounds; and whether this new law is constitutional or not is the sole question presented for our consideration. Though the petition is presented by Foucht and the county, the two appearing as joint petitioners, in our discussion of the case we shall treat the matter, for the sake of brevity, as though Foucht were the sole petitioner.

Section 4041c reads: "Whenever in the judgment of the board of supervisors of any county it is necessary for the expeditious transaction of the business of any county office, the board by unanimous vote may provide for and allow additional assistance to any county officer. In any such case the board of supervisors shall fix the amount of compensation of such additional employees and shall limit in advance the period of time for which assistance is allowed.

The powers granted to the supervisors under the provisions hereof shall not be so exercised as to result in increasing the compensation of any county officer after his election or during his term of office.''

Prior to the adoption of this section, one Henry Newman had been elected treasurer of Tulare County, then and now a county of the eleventh class. At the time of Newman's election the law respecting the compensation of the county treasurer in counties of the class to which Tulare County belongs and the treasurer's power to appoint deputies was as follows: By subdivision 5 of section 4240 of the Political Code it was and is provided: ''In counties of the eleventh class the officers shall receive as compensation for the services required of them by law, or by virtue of their office, the following salaries: . . . The county treasurer, two thousand eight hundred dollars per annum, and one deputy at one thousand eight hundred dollars per annum.'' Section 4290 of the Political Code declared then, as it still does, that ''the salaries and fees provided in this title shall be in full compensation for all services of every kind and description rendered by the officers named in this title either as officers or *ex officio* officers, their deputies and assistants, *unless in this title otherwise provided,* and all deputies employed shall be paid by their principals out of the salaries provided in this title, *unless in this title otherwise provided.*'' Ever since 1907, section 4024 has provided that ''every county . . . officer . . . may appoint as many deputies as may be necessary for the prompt and faithful discharge of the duties of his office.''

The circumstances of petitioner's employment are as follows: Prior to November 8, 1921, the date of his employment, valid county warrants were presented to the treasurer, but, for want of funds, were not paid. From the time of their presentation these warrants bore interest at the rate of five per cent per annum, payable by the county (Pol. Code, sec. 4105). On November 8, 1921, there remained unpaid of such warrants a large number, the total sum due thereon amounting to something like $400,000. At the date of petitioner's employment there was sufficient money in the county treasury to pay all of these interest-bearing warrants. Accordingly, the county treasurer, pursuant to section 4106 of the Political Code, gave notice in a

newspaper that he was ready to pay the warrants. Thereupon it became necessary for the treasurer to estimate the accrued interest on all of these unpaid warrants before payments could be made. At that time the county treasurer had in his office but one deputy—the only deputy for whom a salary was provided by law. (Pol. Code, sec. 4240, subd. 5.) Under these circumstances, the expeditious transaction of the business of the county treasurer's office and the convenience of the public necessitated, in the judgment of the board of supervisors, that additional assistance should be provided and allowed the treasurer for the purpose of estimating the interest on these warrants. Thereupon the board, on November 8, 1921, provided for and allowed additional assistance to the county treasurer for the purpose of estimating the interest on these unpaid warrants. This it did by adopting, unanimously, a resolution whereby the petitioner here was employed by the board to assist the county treasurer in estimating the accrued interest on the interest-bearing warrants. The resolution fixed petitioner's compensation at seven dollars per day for the period of twenty-six days. Petitioner accepted the employment and performed the services for the period mentioned. In due time he presented to the board of supervisors his claim for such services. The claim, which was in proper form, was allowed by the board. Respondent, who, as we have said, is the county auditor, refuses to draw a warrant on the county treasurer authorizing payment of petitioner's claim, although there has at all times been ample money in the proper fund for that purpose. Hence this proceeding.

In support of his claim that section 4041c is unconstitutional and the employment of petitioner unauthorized, respondent contends: (1) That the employment of petitioner to assist the county treasurer worked an increase in the latter's compensation subsequent to his election and during his term of office, in violation of section 9 of article XI of the constitution; (2) that this code section is inconsistent with that uniformity which is required by section 11 of article I and by section 4 of article XI; (3) that it contravenes section 5 of article XI, which requires the legislature to regulate the compensation of county officers in proportion to duties; (4) that it is a local or special law, and hence violative of subdivision 28 of section 25 of article IV;

57 Cal. App.—44

and (5) that it involves an unlawful delegation of power, in contravention of section 13 of article XI.

It is not possible for any legislature, however farsighted it may be in anticipating future conditions, to foresee and provide against those occasional and extraordinary conditions of public business which inevitably must arise in many of the counties of the state from time to time between legislative sessions. Such emergencies, when they do arise, cannot be successfully taken care of by inflexible strait-jacket legislation, rigidly fitted to those conditions which are known to and can be perceived by the legislature when the law is passed. To meet such unforeseen, abnormal situations as they present themselves, a law possessing the requisite elasticity and conformability, such as section 4041c, for example, is necessary. The section in question seems to be the result of an honest and enlightened endeavor on the part of the legislature to deal equitably and fairly with a vital problem; and in any consideration of respondent's attacks upon this law we must never lose sight of the fact that, to justify the judiciary in declaring invalid such a statute, passed by a co-ordinate branch of the government, its conflict with the constitution should be clear and positive.

[1] The solution of some of the questions presented by respondent's argument against the constitutionality of section 4041c depends upon whether the section contemplates the creation of an office or the mere employment of an employee or servant of the board of supervisors. At the outset, therefore, it is essential to consider whether, in employing assistance under this new code section, the supervisors create a county office. We are satisfied that they do not. "A public office," says our supreme court in *Coulter* v. *Pool*, 187 Cal. 181 [201 Pac. 120], "is ordinarily and generally defined to be the right, authority, and duty, created and conferred by law, the tenure of which is not transient, occasional, or incidental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public. . . . The most general characteristic of a public officer, which distinguishes him from a mere employee, is that a public duty is delegated and entrusted to him, as agent, the performance of which is an exercise of a part of the govern-

mental functions of the particular political unit for which he, as agent, is acting. There are other incidents which ordinarily distinguish a public officer, such, for instance, as a fixed tenure of position, the exaction of a public oath of office, and, perhaps, an official bond, the liability to be called to account as a public offender for misfeasance or nonfeasance in office and the payment of his salary from the general county treasury.''

Measuring the provisions of this code section by the foregoing definition, it seems evident that it does not contemplate the creation of a public office, but provides only for the employment of a mere employee or servant of the board of supervisors to assist a county officer whenever an emergency arises—such an emergency as, in the judgment of the board of supervisors, makes it necessary in the expeditious transaction of the county's business that additional assistance be provided. The instant case affords a good illustration of the nature of the employment under the power vested in the several boards of supervisors by this code section. Here petitioner was temporarily employed, under contract, at a fixed per diem, to assist in expediting a part of the business of a county office by making certain interest calculations.

No oath of office or official bond is exacted from the person who is employed by the board of supervisors under section 4041c. There is no fixed tenure of office. On the contrary, the period of employment contemplated by the section is temporary and transient. The employment is but incidental and occasional. It begins and ends with the emergency which furnishes its reason and justification.

An office, as a general rule, is based upon some law which defines the duties appertaining to it and which fixes the tenure. The county engineer act which was before the court in *Coulter* v. *Pool, supra,* was such a law. There the legislature attempted to create an office; for the statute purported to define the duties of a county engineer and to fix his term at four years. An employment, as distinguished from an office, is, as a rule, based upon a contract with the employee, defining his duties, fixing his compensation and determining the period of his employment. As a general rule, a duty or employment which arises out of a contract, and which is dependent for its duration and extent upon

the terms of the contract, is not an office. One so employed is not an agent of the state; he is the servant or employee of the person or persons employing him, although the latter may be public officers and the employment may be in and about a public work or position. (*McDaniel* v. *Yuba County,* 14 Cal. 444; *White* v. *Alameda,* 124 Cal. 95 [56 Pac. 795]; *Patton* v. *Board of Health,* 127 Cal. 388 [78 Am. St. Rep. 66, 59 Pac. 702]; *People* v. *Wheeler,* 136 Cal. 652 [69 Pac. 435]; *City of Tampa* v. *Kaunitz,* 39 Fla. 683 [63 Am. St. Rep. 202, 23 South. 416]; 29 Cyc. 1366.) In *City of Tampa* v. *Kaunitz, supra,* the supreme court of Florida held that a person employed by a city council under a contract to assist the assessor in making an assessment is not a public officer, but merely an employee of the council.

[2] Nor can the person employed under this new section be regarded as a deputy by reason of such employment. His employment by the supervisors does not authorize him to act in the name of the county officer whom he is employed to assist. He has no power to exercise the duties of an office in the name of its incumbent. A deputy, by the very act and authority which constitutes him such, has power to do any act which his principal may do, and to do the act in his principal's name. Not so, however, as to an assistant employed by a board of supervisors under this section of the Political Code. Take the present case, for instance. The petitioner here was employed to assist the county treasurer by making and tabulating certain arithmetical calculations. That is, he was employed to compute certain interest charges against the county. But this did not interfere with the county treasurer's right to exercise sole control of his office. All the political functions of that office remained vested in the county treasurer, who would continue to exercise them himself, when present, and in his absence they would be exercised by the deputy treasurer in the name of and as the act of his principal. In accordance with the maxim *ut res magis valeat quam pereat,* statutes should, when reasonably possible, be so construed as to render them valid and give them force and effect. Section 4041c is readily susceptible of such a construction that an assistant employed thereunder shall not be deemed to be vested with any power the due exercise

whereof can, by any possibility, displace any of the authority or power of the county officer whom he is employed to assist, or interfere with the performance by such officer of the functions with which the law has clothed him. The county officer and his deputy or deputies will continue to exercise all the discretionary power that appertains to the office, the assistant employed by the supervisors simply standing by and doing what he is told to do in helping or aiding the county officer or his deputies. The county officer continues as before to exercise and, in his own person, to represent the sovereign power of the state. The servant of the board, temporarily employed under a contract to *assist* the county officer in performing certain of the duties appertaining to the office, does not in his own person represent any sovereign power. *Ventura County* v. *Clay,* 112 Cal. 65 [44 Pac. 488], a case cited by respondent, is not in point. There the person who was employed by the supervisors was not employed to *assist* the tax collector; he was employed to perform the functions of the tax collector. He entirely supplanted that county officer in the performance of a part of the duties appertaining to the office of tax collector. Instead of assisting him, he actually displaced the county tax collector; with the result that in that case the board of supervisors, contrary to law, undertook to create a county office. That is not the case here.

Nor is there any substantial ground for respondent's fear that the person employed to assist the county officer might be deputized by the latter, with the result that such officer might thus secure, in effect, one more *salaried* deputy than he is allowed by statute. If the assistant employed by the supervisors were made a deputy by the county officer it would not be by reason of any authority therefor conferred by section 4041c. Nor would such deputy be entitled to receive, as deputy, any compensation under that section of the Political Code. Any wage paid him under his employment by the board of supervisors would be solely for the work done by him as an employee of the board employed temporarily to assist the county officer during an emergency when the expeditious transaction of the business of such county office necessitates such extra assistance. We may not assume that the supervisors will continue the employment longer than the emergency which makes it neces-

sary, nor that they otherwise will abuse the power vested in them by this code section.

Concluding, as we do, that plaintiff was but an employee and not an officer, and that section 4041c under which he was employed contemplates, not the creation of a public office but a temporary and occasional employment under contract in times when the county is confronted with emergent situations, we now approach the questions suggested by counsel's attacks upon the constitutionality of this code section.

[3] There is no merit in the claim that plaintiff's employment to assist the county treasurer increased the latter's compensation in violation of section 9 of article XI of the constitution, which provides that the compensation of a county officer "shall not be increased after his election or during his term of office." The legislature, by appropriate legislation and for the purpose of regulating the compensation of all county officers in this state in proportion to duties, has classified the counties by population, as is required by section 5 of article XI of the constitution. In thus regulating their compensation, the legislature has adopted a twofold plan or scheme for compensating county officers. That is to say, some county officers are allowed a gross sum out of which to compensate themselves for their own personal services and likewise to pay the expenses of their offices, such, for example, as clerk hire and the salaries of their deputies. This method we shall designate as the "lump sum" system of compensation. Other county officers, the county treasurer of Tulare County, for instance, are allowed fixed amounts for their own personal salaries and separate and distinct amounts for deputy hire or other expenses. Thus, in Tulare County it is provided that the county treasurer shall receive as compensation for his own services $2,800 per annum, and, in addition, is allowed one deputy at a fixed salary of $1,800 per annum, both payable out of the county treasury. The result is that, in addition to the fifty-eight classes of counties which have been classified by population for the purpose of regulating compensations in proportion to duties, we have the county officers throughout the state divided into a twofold classification based upon the method whereby they receive their

compensations, those in one class receiving their compensation under the "lump sum" system, and those in the other class receiving as compensation for their personal services fixed and definite salaries. In thus classifying county officers by these two methods of compensation, the legislature has kept within the limits of its constitutional powers, because "under either rule a compensation proportionate to duties may be secured." (*Tulare County* v. *May,* 118 Cal. 303, 308 [50 Pac. 427, 429].)

In counties where the "lump sum" system prevails, any increase after the election of a county officer of the gross amount allowed him for the compensation of himself and deputies necessarily would work an increase in his compensation during his term of office, in violation of section 9 of article XI of the constitution. Such increase in the gross amount allowed for the compensation of the principal and his deputies would indirectly add to the sum allowed the principal as compensation for his own personal services, as is clearly pointed out by the supreme court in *Dougherty* v. *Austin,* 94 Cal. 601 [16 L. R. A. 161, 28 Pac. 834, 29 Pac. 1092], particularly in the concurring opinion of Mr. Chief Justice Beatty. But where, as in the instant case, the principal is allowed a fixed salary for his own services, and his deputies or assistants are likewise allowed fixed salaries, the principal's compensation is not augmented by any increase in the number of his deputies or assistants or by any increase in the salaries of such deputies or assistants. " . . . where the statute provides a fixed salary for the officer and a separate allowance for expenses of his office, . . . or a fixed salary for a certain number of deputies or clerks, all payable out of the county treasury, an increase of such separate allowance for expenses or for deputies, whether in the number of deputies or the amount paid to each, is not a violation of the constitutional provision that 'the compensation of any county, city, town or municipal officer shall not be increased after his election or during his term of office.' " (*Newman* v. *Lester,* 11 Cal. App. 581 [105 Pac. 785].) From this it follows that the payment of wages to an employee employed by the board of supervisors of Tulare County under section 4041c of the Political Code to assist the county treasurer of that county

does not increase the latter's compensation, since his salary
—$2,800—will remain the same.

[4]  In those counties where the "lump sum" system ob-
tains, section 4041c will not be available for the employ-
ment of an assistant to assist a county officer who was
elected prior to the adoption of this new law.  In such
counties the operation of the law will be postponed until
the expiration of the terms of those officers who were
elected before this code section went into effect.  This is not
because the section expressly exempts any county or any
county officer from its operation, but solely because the con-
stitutional inhibition against increasing the compensation of a
county officer after his election or during his term of office
effects a temporary abatement in the operation of the sec-
tion within those counties where the county officers are com-
pensated by the "lump sum" method.  This want of pres-
ent universality of operation throughout the entire state,
due to the fact that the section is not immediately operative
in the "lump sum" counties, seems to be respondent's prin-
cipal ground of attack.  We pass, therefore, to a considera-
tion of this objection.

[5]  Our constitution provides that "all laws of a gen-
eral nature shall have a uniform operation."  (Sec. 11,
art. I.)  As we understand respondent's argument, he does
not claim that section 4041c is not uniform in its opera-
tion throughout the state in so far as the power conferred
thereby may be exercised without violating the constitu-
tional inhibition against increasing the compensation of a
county officer after his election or during his term of office.
Respondent's argument, as we understand it, runs substan-
tially as follows: If the power to employ additional assis-
tance under section 4041c be exercised in the "lump sum"
counties prior to the expiration of the terms of the present
office-holders in those counties, there inevitably must ensue a
violation of the constitutional interdiction against increasing
a county officer's compensation after his election or during
his term of office; if we endeavor to shun this Scylla we
necessarily shall fall into the Charybdis of nonuniformity
of operation, for the reason that, though this code section
is immediately operative in one class of counties, its opera-
tion in the other class—the "lump sum" class—must be

postponed until the expiration of the terms of the present
office-holders, thus producing a condition of nonuniformity
as to the *time* of operation in the several counties of the
state. This, in substance, is the argument for respondent,
as we understand it. We think it more plausible than
sound.

Without doubt, section 4041c is a law of a general nature.
Its subject matter—the power to employ additional as-
sistance in any county of the state whenever necessary to
expedite the business of a county officer—is a subject of a
general nature. It relates to a matter of equal interest in
every part of the state, and is general in its aims and in
the object which it has in view. In form, it is a general
law. It purports to apply equally to all the counties of
the state. It is, therefore, without doubt, a law of a
general nature, and as such must have that uniformity of
operation which is contemplated by section 11 of article I
of the constitution.

If this code section were a clear and unequivocal attempt
to evade the constitutional mandate as to uniformity of
operation by expressly and intentionally confining its opera-
tion to a limited class of counties, as was the case in *Miller*
v. *Kister*, 68 Cal. 142 [8 Pac. 813], we would unhesitatingly
declare it to be unconstitutional. Such legislation, though
the purpose be disguised by the use of general language, is
not to be tolerated. But we can discover no such attempted
evasion here. We look in vain for any evidence of an in-
tention to limit the law's operation to any particular class
of counties. If it does not become operative at the same
time in all the counties of the state, it is because the con-
stitution itself has temporarily abated its operation in a
certain class of counties—the counties where the "lump
sum" system prevails. Upon the expiration of the terms
of the incumbents in the "lump sum" counties the section
will be equally operative in all parts of the state, if not re-
pealed in the meantime.

The whole question, then, resolves itself into this: Does
this law, on its face applicable alike and immediately to
every county in the state, lack the constitutional requisite
of uniformity of operation because it is immediately opera-
tive in one class of counties while in the other class its
operation is temporarily deferred by the constitution itself

by reason of the inhibition against any increase of a county officer's compensation after his election or during his term of office? This question must, we think, be answered in favor of the constitutionality of the law.

"The word 'uniform' in the constitution does not mean universal. The section [sec. 11, art. I of the Const.] intends simply that the effect of general laws shall be the same to and upon all persons who stand in the same relations to the law—that is, all the facts of whose cases are substantially the same." (*Hellman* v. *Shoulters,* 114 Cal. 147 [44 Pac. 915, 45 Pac. 1057].) A law which applies equally to all persons or things within a legitimate class does not violate the provision requiring laws of a general nature to have a uniform operation. (*Ex parte Sohncke,* 148 Cal. 266 [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 956] ; *Johnson* v. *Gunn,* 148 Cal. 749 [84 Pac. 665].) "It has been uniformly held that a law is general which applies to all of a class—the classification being a proper one—and that the requirement of uniformity is satisfied if it applies to all of the class alike." (*Hellman* v. *Shoulters, supra.*) The classification is a proper one if it is founded upon some natural or intrinsic or constitutional distinction. (*City of Pasadena* v. *Stimson,* 91 Cal. 238, 251 [27 Pac. 604] ; *Johnson* v. *Gunn, supra.*)

In the present case we have a classification founded upon a constitutional distinction—in other words, a *legitimate* classification. Section 4041c has not created the classification. It makes no attempt to classify counties or county officers. It is the constitution which, indirectly, has made the classification. The new law is simply confronted by a situation growing out of the existence of previous valid legislation and the effect thereon of section 9 of article XI of our constitution. That is, the only reason why this code section becomes operative in different counties at different times is because the constitution itself works that result by making the law inapplicable during the present term of those county officers who are compensated by the "lump sum" method. The constitution itself creates the class, and section 4041c operates uniformly upon all persons standing within that class. In order to constitute the uniformity of operation specified in the constitution it is not necessary that the general law shall operate alike upon all the sub-

jects or persons to which it applies independent of all other considerations. It is enough that it operates uniformly upon all persons standing in the same category and upon rights and things in the same relation. (*People* v. *Henshaw*, 76 Cal. 442 [18 Pac. 413].)

In *People* v. *Henshaw, supra,* it was held that the term ''uniform operation,'' as used in the constitution, does not involve, as a necessary essential, an identity of *time* of operation, so as to make it necessary that the act shall take effect at the same time upon all the subjects to be governed by it. The court in that case says: ''This argument [the argument that the act lacks uniformity of operation because it is to take effect in different cities at different times] involves the consideration of what it meant by the term 'uniform operation,' as used in the constitution. Does it involve, as an essential, identity of time, so as to make it necessary that it take effect at the same time upon all subjects to be governed by it? . . . If the law operates equally upon all the objects embraced within it, *when they come within the circle or scope of its authority,* the uniformity of operation contemplated by the constitution is attained. . . . If it meets every contingency when it arises and treats all the contingencies of like character in like manner, it is uniform in its operation. We do not think identity as to the time of operation essential, except where it is coupled with identity of facts or circumstances. *Under the same circumstances,* existing at the same period of time, the law must apply equally at the same time, or uniformity of operation is not attained. Beyond that, identity as to time of application is not necessary.'' (76 Cal. 444 [18 Pac. 416]. Italics ours.) Tested by these principles, it must be held that section 4041c is uniform in its operation. It operates equally upon all objects embraced within it the very moment that they come within the scope and circle of its authority. When the circumstances existing in any number of counties in any given period of time are like, the section affects in like manner and at the same time all of the counties as to which there exists such identity of circumstances. For these reasons we conclude that the section is in no sense opposed to the uniformity of operation required by section 11 of article I of the constitution.

[6]    The next question presented is this: Is section 4041c inconsistent with the uniformity required by that mandatory provision of the constitution which declares that "the legislature shall establish a system of county governments which shall be uniform throughout the state." (Art. XI, sec. 4.) If by this no more is intended than that the several county governments throughout the state shall be of similar political structure, that is, that each shall be governed by the same class of offices, so that each shall have a board of supervisors, a district attorney, a sheriff, a treasurer, auditor, etc., then it cannot be said that section 4041c impairs that uniformity in the established system of county governments which is contemplated by this section of the constitution, for the reason that an assistant employed by the board of supervisors under this code section is in no sense an officer of the county.

The decision of our supreme court in *Coulter* v. *Pool, supra,* lends some support to the view that the uniformity in the system of county governments which the constitution contemplates means no more than uniformity in the political structure of the several counties; that is, that each shall be governed by the same kind of officers. In that case the court differentiated the County Engineer Act —the act which it held to be unconstitutional—from the Law Library Act considered in the case of *Board of Law Library Trustees* v. *Board of Supervisors,* 99 Cal. 571 [34 Pac. 244], upon the ground that, though the latter act left to the option of the different counties the matter of the establishment of a law library, nevertheless, "such institutions are not part of the system of county government, at least so far as the execution of *'political* functions' is concerned." (Italics ours.) But, be this as it may, even if the uniformity contemplated by this constitutional requirement does mean more than a uniformity of political structure—even if it means, as it probably does, that the same *powers* shall be vested in each and every board of supervisors throughout the entire state—nevertheless, it cannot be held that section 4041c subverts the necessary uniformity in the general plan or scheme of county governments. In *Coulter* v. *Pool, supra,* it is said that "the constitution contemplates and commands that the system of county governments shall be uniform throughout the state,

*except in those special cases where the constitution itself sanctions a departure from uniformity.*" (Italics ours.) Since the sole ground for claiming that section 4041c is inconsistent with a uniform system of county governments is that its operation does not commence synchronously in all of the counties of the state, and since this want of identity in the *time* of operation is a result worked by the constitution itself by reason of the existence of the two different systems for compensating county officers, it follows that this is a case where the constitution, *ex proprio vigore,* sanctions a departure from uniformity in the system of county governments.

[7] It next is claimed that section 4041c conflicts with that provision of section 5 of article XI of the constitution whereby it is provided that the legislature, by general and uniform laws, shall prescribe the duties and fix the terms of office of all county "officers," and shall regulate their compensation in proportion to duties, and, for that purpose, shall classify the counties by population. The obvious answer to this objection is that an assistant employed under this new code section has no term of office and is not a county officer but a mere servant or employee of the board of supervisors, employed temporarily to meet an emergent situation. For this reason section 5 of article XI is inapplicable. The case is within the principle of those decisions which hold that the board of supervisors of any county may, by contract, employ the services of a physician, attorney, etc., fix his compensation, and prescribe his duties. The power of the board to make such contracts has often been upheld (*People* v. *Wheeler, supra; Lassen County* v. *Shinn,* 88 Cal. 510 [26 Pac. 365]; *Power* v. *May,* 123 Cal. 147 [55 Pac. 796].) There is no merit in the objection.

[8] Equally devoid of merit is the contention that section 4041c is a local and special law, and as such violative of subdivision 28 of section 25 of article IV of the constitution, which provides that "the legislature shall not pass local or special laws . . . creating offices or prescribing the powers or duties of officers in counties, cities, city and counties, townships, election or school districts." This section of the Political Code does not attempt to create an office; and what has been said is a sufficient answer to

this objection. Moreover, the section is not a local or special law. By its terms it operates throughout the state, in each and every county thereof. If it does not immediately become operative in some counties, the reason is extrinsic, not intrinsic; it is a result due solely to the fact that, by virtue of an express provision of the constitution itself—that which forbids any increase of a county officer's compensation after his election or during his term of office—the operation of this code section is temporarily held in abeyance in certain counties. Such a law is neither local nor special.

[9] Finally, it is contended that this code section violates that provision of the constitution (art. XI, sec. 13) which provides that "the legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or assessments or to perform any municipal functions whatever." The claim that section 4041c conflicts with this clause of the constitution is based upon the contention that it gives to boards of supervisors the power to control and appropriate county funds. There is no force in the objection. The supervisors do not control or appropriate any county moneys. They are merely vested with a discretionary power to incur the expense incident to the employment of assistants employed to help in the transaction of the business of the county, just as they do when they contract for the services of a physician to attend upon the indigent sick and dependent poor of the county (*People* v. *Wheeler, supra*), or when they employ special counsel to defend or prosecute suits to which the county is a party or to collect moneys due it (*Lassen County* v. *Shinn, supra; Power* v. *May, supra*). Such discretionary power is frequently reposed in county legislative bodies, and the expense resulting from an exercise thereof does not involve the control or appropriation of county moneys or property by any "special commission," "private corporation," "company," "association" or "individual." (See *Tulare County* v. *May,* 118 Cal. 308 [50 Pac. 427].) Of course, boards of supervisors have no right to waste or give

away moneys belonging to the county, or to expend them otherwise than in the interest of the public. Power, however, must be reposed somewhere. We may not assume that it will be abused. And for the purpose of affording, temporarily, such additional assistance as may be necessary to meet those unexpected situations in the transaction of the county's business which inevitably must arise between sessions of the legislature, we know of no more suitable repository of the power to employ the needed assistants than the board of supervisors—the local legislative body the members whereof are chosen by the electors of the county.

In none of his assaults upon the section of the Political Code here under attack has respondent shown any clear and positive conflict with the state's organic law. Wherefore, it is ordered that the peremptory writ of mandate issue as prayed.

Works, J., and Craig, J., concurred.