[Civ. No. 6531.   Second Appellate District, Division One.—June 1, 1931.]

PACIFIC   FINANCE   CORPORATION,   Respondent,   v. THE CITY OF LYNWOOD (a Municipal Corporation), Appellant.

Roscoe R. Hess, City Attorney, Brewton A. Hayne and Arthur P. Hayne for Appellant.

John A. Rush and John L. Rush for Respondent.

BISHOP, J., *pro tem.*—Plaintiff recovered judgment against the defendant city on a contract entered into between the city and one George A. Schwabland, a civil engineer, the rewards of which were by Schwabland assigned to plaintiff. The appellant city seeks a reversal of the judgment, urging several reasons. It first contends that Schwabland was an officer of the city, and that, as it is against public policy to permit the unearned salary of a public officer to be assigned, plaintiff was not entitled to judgment for any sum. Furthermore, as the city could remove its appointive officer at any time, and did so before any money was due him, his assignee, it is argued, had no money due it. An added reason for a reversal is claimed in Schwabland's failure to file a demand in the manner required by a city ordinance. In any event, it is suggested, plaintiff can recover no more than the actual expenditures of its assignor, for the proceedings on which he had worked were abandoned.

Schwabland's first relation to the city began when, at a regular meeting of the board of trustees of the defendant city held August 12, 1925, action was taken whereby he was "appointed City Engineer without compensation until contract be drawn and approved. Said appointment be during the pleasure of the Board." Thereafter a formal contract was entered into and, to make a correction in the date, re-executed November 4, 1925. The important provisions of this contract may be sketched as follows: Following a recital that the board of trustees had been petitioned to institute proceedings for the improvement of various city streets under the street improvement laws of the state, and that it was necessary to prepare plans, specifications, etc., to carry out such improvements, Schwabland was obligated to prepare the maps, plans, etc., necessitated by the improvements; to furnish the forms of resolutions, notices and other writings required by the proceedings; to do all the engineering work to carry the work through to completion, under his supervision; and then to prepare the assessment-rolls and other documents needed in the final stages of the proceedings. His duties under the contract were thus summed up: "The purpose of this contract being to obligate said George A. Schwabland to perform in a thorough and workmanlike manner, all engineering and inspection service necessary to secure for the City of Lynwood the best possible improvement for the money expended." On its part the city agreed to pay Schwabland six per cent of the total contract price of all improvements except in the case of ornamental lighting systems, in which case the fee was to be four per cent, "said six per cent (6%), or said four per cent (4%) to be paid . . . in the manner provided by the improvements Acts of the State of California". It was further agreed that "in case that said improvements are abandoned for any reason beyond the power of said George A. Schwabland to control", he was to be reimbursed for his actual expenditures, not including anything for his personal services. Also, for any routine engineering work ordered by the board of trustees and not covered by an improvement act proceeding he was to be paid the actual cost to him of such work.

Upon the execution of this agreement Schwabland assigned to plaintiff all moneys due or to become due him for services

as city engineer of Lynwood, "and especially all moneys and compensation . . . to become payable to me under the terms" of the contract just reviewed. At once Schwabland began to prepare maps, plans, etc., looking to an extensive sewer system throughout the city. A recall election early in the year 1926 changed the complexion of the board of trustees, and on February 3d, the new board first declared the office of city engineer vacant (appointing Schwabland temporary city engineer without pay), then on March 3d instructed him to discontinue work on the local sewer system until further notice and to file his bill for work done. On April 28, 1926, a vacancy was again declared, and another individual appointed to the office, under whose auspices a somewhat enlarged sewer project was carried to completion.

Plaintiff was given judgment for $16,254, made up of the sum of $8,679 expended by Schwabland in the work he performed before he was stopped, and of the sum of $7,575 profit he would have made if the city had not prevented the completion of his work under the contract.

Plainly appellant's first two arguments, respecting the nonassignability of salary and the right to remove from office at will, both depend upon the premise that Schwabland's right to the sums awarded by the judgment grew out of his official status as city engineer. Admitting that his original appointment gave him that status, it was by its terms to continue "until contract be drawn and approved", and, furthermore, it was an appointment without compensation. It is obvious that unless his contract with the city made him a public officer, his right to compensation is not traceable to any public office. ▮ In the minutes of the meetings held by the board of trustees there are frequent references to Schwabland as city engineer, but this characterization is not determinative of the relationship growing out of the contract. Nor was the court bound by the belief expressed in the original complaint that the contract made Schwabland city engineer. In a similar situation our Supreme Court said: "Any reference to him in the minutes of the contract or in the evidence as 'city engineer' is not controlling." (*Kennedy* v. *City of Gustine*, (1926) 199 Cal. 251, 255 [248 Pac. 910].) Unless the contract made Schwabland city engineer, his rights to compensation under the contract are not cut off by attempting to amputate his

official head, nor is the principle that the unearned salary of a public official is unassignable, applicable.

It is our conclusion that the contract did not operate to make Schwabland a public official. It would be futile to attempt to reconcile the many definitions and illustrations of "public officer". This much is certain. ■ To have a public officer you must first have a public office, created by the Constitution, legislature, or some legislative body with delegated authority; an office that exists independently of the presence of a person in it. (*People* v. *Stratton*, (1865) 28 Cal. 382; *Patton* v. *Board of Health*, (1899) 127 Cal. 388 [78 Am. St. Rep. 66, 59 Pac. 702]; *Wall* v. *Board of Directors*, (1904) 145 Cal. 468 [78 Pac. 951].) ■ A public officer is not the offspring of a contract. (*McDaniel* v. *Yuba County*, (1859) 14 Cal. 444; *White* v. *City of Alameda*, (1899) 124 Cal. 95 [56 Pac. 795]; *Foucht* v. *Hirni*, (1922) 57 Cal. App. 685 [208 Pac. 362]; *Curtin* v. *State of California*, (1923) 61 Cal. App. 377 [214 Pac. 1030].) For further authorities from sister states see 53 A. L. R. 599. We are not attempting to rely upon the distinction which may be made between "public office" and "public position", both of which are the result of legislative creation, but which may be said to differ one from the other depending upon the presence or absence of duties partaking of sovereignty. A contractual relation differs from either. *Miller* v. *Boyle*, (1919) 43 Cal. App. 39 [184 Pac. 421], deals with the distinction to be made between a person employed by contract and one appointed to a public position. Of interest in making plain the distinction we are emphasizing are the several cases dealing with the rendition of medical services for the public. If the services are contracted for, those serving are not officers. (*McDaniel* v. *Yuba County*, *supra; People* v. *Wheeler*, (1902) 136 Cal. 652 [69 Pac. 435].) If, however, the services are being rendered by those appointed to offices created by the legislature, those serving are officers. (*People* v. *Harrington*, (1883) 63 Cal. 257; *Patton* v. *Board of Health*, *supra; Wall* v. *Board of Directors*, *supra.*)

■ There is not a word in the contract between Schwabland and appellant city which indicates that the parties were endeavoring to insert Schwabland into the office of city engineer ("civil engineer", sec. 851 of the Municipal Cor-

poration Act terms the office), or to create for him any public office. He is not, by virtue of the contract, a public officer. (See *Kennedy* v. *City of Gustine, supra,* and *Southlands Co.* v. *City of San Diego,* (1931) 211 Cal. 646 [297 Pac. 521].) His contractual rights with the city therefore cannot be terminated at the city's will, *McDaniel* v. *Yuba County, supra,* nor is an assignment of the unearned fruits of the contract against public policy. (*Walker* v. *Rich,* (1926) 79 Cal. App. 139 [249 Pac. 56].)

◼ Appellant's third argument, that no claim had been filed as required by the city ordinance governing such matters, is found under the topical heading: ''The complaint does not state facts sufficient to constitute a cause of action.'' The location of the argument under this heading reveals its weakness, for the filing of the claim is not required by general law, but by an unproven city ordinance. The superior court as a trial court takes no judicial notice of city ordinances (*Muther* v. *Capps,* (1918) 38 Cal. App. 721. [177 Pac. 882]), nor does this court on appeal. (*Marysville Woolen Mills* v. *Smith,* (1918) 178 Cal. 786 [175 Pac. 13].) The complaint, therefore, cannot be said to be lacking because it fails to allege compliance with an ordinance the existence and terms of which are not known. Appellant city recognized the necessity of pleading the ordinance as a defense, but failed, so far as we are made aware, to prove its passage and provisions. Section 864 of the Municipal Corporation Bill (Deering's Gen. Laws 1923, Act 5233, p. 2239) begins: ''All demands against such city or town shall be presented to and audited by the board of trustees, in accordance with such regulations as they may by ordinance prescribe; . . . '' In the absence of an ordinance there is no method prescribed which is a condition precedent to filing suit. Appellant having failed to furnish proof of an ordinance, has failed to establish the defense on which it relies.

◼ The further argument that in no·event is plaintiff entitled to more than the actual expenditures of its assignor, is predicated on the claim that the improvements were abandoned. The trial court found as a fact that they were not, and the evidence supports the conclusion. There was no technical abandonment of any proceeding, certainly, for up to the time Schwabland's further services were declined

there had been no formal step taken to initiate a proceeding. Actually, the "improvements", the term employed in the last paragraph of the contract, were not abandoned, but so far as begun by Schwabland were carried on to completion with changes in detail not amounting to an abandonment.

Appellant makes some criticism of the findings. We have checked his objections and find none of them of substance. In the main they present in other dress matters already discussed.

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 1, 1931, and the following opinion then rendered thereon:

THE COURT.—A quotation from the early case of *Andrews* v. *Mokelumne Hill Co.*, (1857) 7 Cal. 330, is apposite: "This case may be said . . . to be a fair illustration of a most pernicious practice which has sprung up among the bar in many instances, of presenting cases without that care and examination of the record which is necessary to a correct understanding of the case, and afterwards trusting to the indulgence of the court by way of a petition for a rehearing . . . Such a practice does great injustice to the bar and the court, and frequently imposes upon us double labor, besides giving to the decisions a seeming contradiction. . . . and we wish to announce that, for the future, we will be less indulgent in such cases."

In the petition for a rehearing, counsel now representing appellant, a substitution having been made, points out that our filed opinion ignores the stipulations with respect to the city ordinance on claims and demands. This is true, but appellant may not complain of it. As pointed out in the opinion a city ordinance is not a general law, but a special one, which must be proven. Because appellant's counsel, in his opening brief, argued the effect of the ordinance under the topical heading, "The complaint does not state facts sufficient to constitute a cause of action," we suppose he regarded the ordinance as a general law which

did not need to be proven. In harmony with this theory we found that neither his opening nor his closing brief contained in the text or in the supplement any copy of, reference to or hint suggesting that if we looked in the typewritten record we would find, a stipulation that the ordinance might be introduced in evidence or any evidence that an ordinance had been passed. Nor in support of the criticism, made in appellant's opening brief, that there was no finding respecting the passage of the ordinance, was there even a suggestion that a stipulation had been entered into or any evidence received respecting it. Not until the petition for a rehearing do we hear of this incident of the trial and that the ordinance was proven before the trial court. We know of no reason why an exception should be made in this case and a rehearing be granted to consider the effect of evidence called to our attention for the first time after the appeal has been submitted and determined.

Complaint is also made that there is no finding respecting the defense that since March 3, 1926, there has been no revenue of the year 1925–26 with which to meet Schwabland's claim. Even the petition for a rehearing fails to reveal the existence of evidence which would support such a finding if it were required, and the briefs serve us no better, even in their generous direction to "see the following pages of the transcript", enumerating some thirty-four. In the absence of evidence, of course, appellant cannot complain if the finding is absent also.

Another thought, suggested for the first time in the petition for a rehearing, is that the contract is invalid because contrary to section 886 of the Municipal Corporation Act (and similar provisions elsewhere), prohibiting any officer of the city from being interested directly or indirectly in any contract with the city. This common-law rule (*County of Shasta* v. *Moody*, (1928) 90 Cal. App. 519) is predicated on the principle that no man can serve two masters (*Stockton P. & S. Co.* v. *Wheeler*, (1924) 68 Cal. App. 592; *Nielsen* v. *Richards*, (1925) 75 Cal. App. 680), and that an officer of a city "cannot be permitted to place himself in any situation where his personal interest will conflict with the faithful performance of his duty". (*Berka* v. *Woodward*, (1899) 125 Cal. 119, 128.) Because we are unable to see how these reasons for the rule are remotely

applicable to the situation in this case we doubt that the contract is in violation of section 886 even should the appointment of Schwabland as an officer be regarded as a permanent one.

We are unable, however, to distinguish this case from *Kennedy* v. *City of Gustine* (cited in our opinion). It is evident that the Supreme Court was not unmindful of section 852 of the Municipal Corporation Act as well as of section 41 of the Improvement Act of 1911 from which they quoted. Rather the Supreme Court saw there, as we see here, a plain intent existing from the first not to appoint a city engineer under section 852 of the Municipal Corporation Act (unless temporarily without pay) nor to fix his compensation and prescribe additional duties by ordinance, as is the method section 881 of the act provides shall be followed for fixing the duties and compensation of city officials. Instead, from the beginning in each case, it was the intention to secure engineering services required for certain improvements for which petitions were on file, such services to be paid for only under improvement acts, the employment to be that authorized by section 41 of the Improvement Act of 1911 (or section 3 of the Acquisition and Improvement Act of 1925 in our case). This was the intent, and in accomplishing it, in the case at bar, a contract calling for legal work and other matters not the duty of a civil engineer as an officer was entered into. If, as held in the Kennedy case, the relation of employee and not that of an officer results, it may not be changed by the employee taking an oath of office. Incidentally, provision was made that routine engineering services, which the city did not obligate itself to request from Schwabland nor he agree to do if requested, were, if done, to be paid for on a cost plus nothing basis. Nor is there any ground for the criticism that by the contract Schwabland may claim a life job. The recitals of the contract refer to petitioned improvements, and these done, there is no theory on which he could claim the contract covers others. His present action is not consistent with any claim for profits denied him on other work.

We see no reason why the agreement on which the plaintiff relies, as assignee, should be held invalid, and we know of no reason why a city, as well as an individual, should not

be expected to keep faith with those with whom it contracts, or else respond in damages for its failure.

The petition for a rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 30, 1931.