[14832. In Bank.—May 8, 1893.]

## H. H. WELSH, APPELLANT, v. R. H. BRAMLET, AUDITOR, ETC., RESPONDENT.

CONSTITUTIONAL LAW—INCREASE OF COMPENSATION DURING TERM OF OFFICE—COUNTY GOVERNMENT ACT—COMPENSATION OF ASSISTANT DISTRICT ATTORNEYS—RELIEF OF DISTRICT ATTORNEYS.— Subdivisions 21 and 23 of section 170 of the County Government Act of 1891, providing that the compensation of the assistants of district attorneys of counties of the eighth class shall be paid by the county, in so far as they purport to relieve the district attorneys of any such counties, who were elected prior to the passage of that act, and whose term of office had not expired at the time of its passage, from the payment of their own assistants, as required by the County Government Act of 1889, is in conflict with section 9 of article XI. of the constitution prohibiting an increase of the compensation of any county or municipal officer after his election, or during his term of office.

ID.— SPECIAL LEGISLATION AS TO DISTRICT ATTORNEYS IN COUNTIES OF ONE CLASS. —Section 170 of the County Government Act, as amended in 1891, by which counties of the eighth class alone are segregated from the others, and authority conferred upon the district attorney therein, which is not granted to that officer in other counties, renders the act to that extent local and special, in violation of the provisions of the constitution.

ID.— CONSTRUCTION OF CONSTITUTION—UNIFORM SYSTEM OF COUNTY GOVERNMENTS. — Under section 4 of article XI. of the constitution, the "system" or plan for the government of the several counties of the state is required to be uniform, so that its several parts shall be applicable to each county.

ID.— MANDATORY PROVISION—UNIFORM LEGISLATION AS TO COUNTY OFFICERS.— Section 5 of article XI. of the constitution, directing that "the legislature by general and uniform laws shall provide for the election or appointment in the several counties" of "such county, township, and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office," is mandatory, and not only gives the legislature exclusive authority to provide for the officers in the several counties, fix their term of office, and prescribe their duties, but also requires that such provision be made "by general and uniform laws," and that any law which the legislature may enact upon such subject must be uniformly applicable to all the counties of the state.

ID. —LOCAL LEGISLATION— CLASSIFICATION OF COUNTIES.—An act of the legisla-
ture that is applicable to only one county in the state, is a local act, and it does
not cease to be such because it purports to be applicable to a class of counties
which the legislature is not authorized to create for the purpose of such legis-
lation, and of which that county constitutes the only member.

ID.—JUDICIAL NOTICE—POPULATION OF COUNTIES—NUMBER FORMING CLASS.—
The court will take judicial knowledge whether any county in the state has a
population which places it in a specified class, and what number of counties
belong to a particular class.

APPEAL from an order of the Superior Court of Fresno
County denying a writ of mandate.

The facts are stated in the opinion of the court.

*H. H. Welsh*, in *pro per.*, for Appellant.

*E. D. Edwards*, and *Sayle & Coldwell*, for Respondent.

HARRISON, J. — The appellant was appointed assistant dis-
trict attorney of Fresno County on the first day of April, 1891,
by virtue of the provisions of subdivision 21, section 170 of the
County Government Act, passed March 31, 1891. He entered
upon the duties of his office, and on the third day of July, 1891,
made a demand upon the respondent, as county auditor, that
he draw a warrant on the county treasury in his favor for the
sum of two hundred dollars, as his salary during the month of
June. The respondent refusing to comply, the appellant insti-
tuted this proceeding for a writ of mandate compelling him to
draw the warrant. The superior court denied the writ and the
petitioner has appealed.

1. Under the County Government Act of 1883, the county
of Fresno became a county of the twenty-sixth class, and
remained in that class until the act was superseded by the
County Government Act of 1891. In 1889 (Stats. 1889, p.
232) the legislature revised the compensation of the officers of
the several counties of the state, and by section 188 of the
County Government Act, as then amended, the salary of the
district attorney in counties of the twenty-sixth class, "for
the services required of him by law or by virtue of his office,"
was fixed at three thousand six hundred dollars, and in section
211 of the same act, page 300, it was declared that the salaries
provided in the act should be "in full compensation for all

services of every kind and description rendered by the officers therein named, either as officers or *ex officio* officers, their deputies, and assistants; and all deputies employed shall be paid by their principals out of the salaries hereinbefore provided." Under the classification of counties made by the legislature in the County Government Act of 1891, according to the census of 1890, Fresno County became a county of the eighth class, and by section 170 of that act, the compensation of the district attorney in counties of the eighth class was fixed at three thousand six hundred dollars. The legislature, however, incorporated into this section of the act the following subdivisions:—

"21. The district attorney may appoint an assistant district attorney at a salary of eighteen hundred dollars per annum; an assistant district attorney at a salary of twenty-four hundred dollars per annum; a deputy district attorney at a salary at fifteen hundred dollars per annum."

"23. All the provisions herein relating to counties of this class shall take effect from and after the date of the approval of this act, and the compensation of all assistants, deputies, and clerks shall be paid by the county in the same manner in which the salaries of county officers are now paid."

Article XI., section 9, of the constitution declares: "The compensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office." If the effect of the foregoing provisions of the act of 1891 was to increase the compensation of the district attorney of Fresno County beyond the amount at which it was fixed at the time his term of office began, they are in conflict with this section of the constitution and do not form the basis of a charge against the county.

In *Dougherty* v. *Austin*, 94 Cal. 601, the county clerk of Marin County, at the time of his election and when his term of office began, was entitled to receive a fixed sum for the services to be rendered by virtue of his office. After he had entered upon his term of office he appointed Dougherty as one of his deputies, by virtue of a provision in the County Government Act, authorizing the board of supervisors in certain classes of counties, one of which included Marin, to permit certain officers, whose compensation for all services to be rendered by them had

been fixed at a gross sum, to appoint deputies whose salaries should be a charge upon the county treasury. Upon an application for a writ of mandate to compel such payment by the county, it was held that that provision of the County Government Act was invalid. That case was very elaborately argued, and was determined upon deliberate consideration, and holds:—

1. That under the provisions of section 5, article XI. of the constitution, the legislature is required to fix the compensation of the county officers, and that it is not competent for that body to delegate the exercise of this authority to the discretion of any other body.

2. That a statute which authorizes the increase of salaries in certain counties, selected arbitrarily and without reference to any criterion as the basis of such selection, is violative of the constitution in not being uniform in its operation.

3. That when the legislature has fixed the compensation of an officer at a gross sum, it cannot increase that compensation during his term of office directly by legislative act or indirectly by providing that the salaries of his deputies, which by the law as it existed when his term of office began were to be paid by him out of this gross sum, shall be made a county charge, and paid out of the county treasury.

In holding that the foregoing provision of the County Government Act was unconstitutional, it was said: "The salary of this officer was fixed by the legislature with direct reference to the fact that out of it he was to pay his own deputies, and the purpose of this amended section is to authorize the board of supervisors of that county to suspend the operation of this law in so far as he is thereby required to pay such deputies, and to place the burden upon the county. The power thus to change a law of the state is necessarily legislative in character, and is vested exclusively in the legislature, and cannot be delegated by it to the board of supervisors of the county" (p. 606); and in the concurring opinion of the chief justice, it was said that the legislature "could not, either by direct enactment, or by authorizing the boards of supervisors to so order, impose upon a county treasury the payment of the salary of any deputy of a county officer elected while the act of 1883 remained in force, and unamended as to the provisions under discussion." (p. 613.)

In the opinion of Mr. Justice Garoutte, which was rendered upon the first hearing in the case, and which was also adopted by the court upon the subsequent hearing, it was said with reference to article XI., section 5 of the constitution: "To construe this provision of the constitution so that a county clerk's salary could not be increased during his term of office, but that an act of the legislature would be valid which provided that all of his deputies, men whom he was bound to employ and bound to pay in the absence of such an act, should be paid by the county, independent of and in addition to the clerk's salary, would be to allow that to be done indirectly which could not be done directly, and would be establishing a medium for the practice of the very abuses which the constitutional provision was inserted to destroy."

At the general election in 1890, W. D. Tupper was elected district attorney of Fresno County for the term of two years, and his term of office began on the first day of January, 1891. At that date the compensation of the district attorney of Fresno County, as provided by the law then in force, was the sum of three thousand six hundred dollars, and this sum was by the same law declared to be in full compensation for all services of every kind and description to be rendered by him and his deputies and assistants, and by virtue of section 9 of article XI. of the constitution, this salary was to remain as his entire compensation during his term of office, or until the first day of January, 1893. The provision in subdivision 21 of section 170 of the County Government Act of 1891, authorizing him to appoint assistant district attorneys and a deputy district attorney, conferred no special authority in this respect, for by section 61 of the act under which he was elected, he was authorized to "appoint as many deputies as may be necessary for the prompt and faithful discharge of the duties of his office." Section 211 of the act which was in force at the time when his term of office began required him, however, to pay the salaries or other compensation of these deputies and assistants out of the salary that had been provided for him in the act, and the foregoing provision in subdivision 23, section 170 of the County Government Act of 1891, that this compensation should be paid by the county, was to that extent an increase of his salary. There is

no difference in principle between a statute authorizing the board
of supervisors to permit a county officer to appoint a deputy,
whose salary shall be a charge upon the county treasury, and
one directly authorizing such officer himself to appoint a deputy,
whose salary shall be paid by the county. The result in either
case is to increase the compensation of the officer beyond the
amount at which it was fixed at the time of his election and at
the commencement of his term of office. If there be any differ-
ence in principle between the two statutes, the stronger argument
is in favor of the one which would subject such appointment to
the arbitrament of the legislative body of the county, rather than
to leave it to the will of the officer himself to determine whether
his salary should be so increased.

2. Section 4, article XI. of the constitution, provides that
" the legislature shall establish a system of county governments
which shall be uniform throughout the state." This means .  .
that the "system" or plan for the government of the several
counties in the state shall be uniform so that its several parts
shall be applicable to each county. The legislature is forbidden
by the constitution from passing any local or special law "regu-
lating county or township business" (art. IV, sec. 25 [9]), or
"prescribing the powers and duties of officers in counties."
(Art. IV., sec. 25 [28]). Section 5 of article XI. directs that
" the legislature by general and uniform laws shall provide for
the election or appointment in the several counties of . . . . such
county, township and municipal officers as public convenience
may require, and shall prescribe their duties and fix their terms
of office." This provision of the constitution is mandatory, and
must be construed not only as giving to the legislature the ex-
clusive authority to provide for the officers in the several coun-
ties, fix their terms of office, and prescribe their duties, but also ·
as declaring that such provision must be made "by general and
uniform laws," and that any law which the legislature may
enact upon these subjects must be uniformly applicable to all
the counties in the state.

The County Government Act of 1891 purports to be appli-
cable to all the counties of the state. Its title is "An act to·
establish a uniform system of county and township govern-
ments." The first one hundred and sixty-one sections of the

act are devoted to provisions for the various officers of the
counties, authorizing their election, fixing their terms of office,
and prescribing their powers and duties. Section 162 makes a
classification of all the counties in the state, according to their
population, "for the purpose of regulating the compensation
of all officers hereinbefore provided for," making fifty-three
classes for the fifty-three counties into which the state was
then divided. This classification is criticised in the respond-
ent's brief as being in contravention of the evident purpose
of the constitution, but it was held in *Longan* v. *Solano Co.*,
65 Cal. 125, that the constitution had conferred upon the
legislature authority to make the classification, and that its
action therein is not reviewable by the judiciary. Sections
163–215, both inclusive, provide for the compensation of the
different county officers in the several classes. In these sec-
tions, in addition to providing for the compensation of the
various officers in the several classes, are found other pro-
visions prescribing duties for county officers in certain classes
which are not made for all classes — fixing the terms of county
officers in some classes at four years, while the section which
declares the term of county officers generally limits it to two
years — establishing special fee bills for certain classes, fixing
the fees of witnesses and jurors in other classes, prescribing
rules for the conduct of courts, and fixing penalties for viola-
tion of ordinances, which are applicable to only one or more
of the several classes. It is, however, unnecessary here to con-
sider the particulars in which the uniformity of the law is
destroyed in matters other than those which refer to the office
and duties of the district attorney. In counties of the second
class the salary of this office is fixed at four thousand dollars
per annum, and the board of supervisors is authorized to allow
him an assistant and five deputies, at salaries to be fixed by the
board, which are to constitute a county charge. In counties
of the sixth class the legislature has itself created the offices
of assistant district attorney and deputy district attorney, "to
be appointed by the district attorney of said county, and to
remain in office during the pleasure of the district attorney
thereof," with fixed salaries to be paid by the county. In
counties of the eighth class alone is the district attorney author-

XCVIII. CAL.—15

ized of his own motion to determine whether he will appoint any deputies, and if so, to make the salary of those appointed a county charge. Section 216 of the act enumerates twenty-nine classes in which authority is conferred upon the board of supervisors to authorize the appointment of deputies whose salary shall be made a county charge, and for several of the classes there is no provision except the general one in section 61, by which this officer can appoint any deputy. The above provision of section 170, by which counties of the eighth class alone are segregated from the others, and authority conferred upon the district attorney therein which is not granted to that officer in other counties, renders the act to that extent local and special, and in violation of the foregoing provision of the constitution.

In *Cody* v. *Murphey,* 89 Cal. 522, we held that an amendment to a section of the County Government Act, fixing the salaries of the county officers in a certain class, was a general law, for the reason that it applied to all counties that were within that class. The logic of that opinion is clear, and embraces all laws falling within the principles of that case. As the legislature is expressly authorized by the constitution to classify the several counties of the state according to their population for the purpose of fixing the compensation of the county officers, it follows that when such classification has been made, a statute providing for the compensation of the officers within any class is a general law, and that it is immaterial whether such provision be in a special statute for each class, or in a single act providing for all of the classes, and that an amendment to such statute which affects an entire class is equally a general law, as was the original act. The legislature has not the general authority to enact laws for the counties by classes, nor is it authorized to make a classification of counties for any purpose of legislation, except for the purpose of enabling it to regulate the compensation of the county officers for whose election or appointment it shall provide. (*San Luis Obispo Co.* v. *Graves,* 84 Cal. 71.) Whenever it attempts to enact a law for one or more of the counties of the state upon subjects that it is directed to provide for by general laws, or which are to form part of a uniform system for the whole state, whether such counties are designated directly by name, or by reference

to a class into which they have been placed for other subjects of legislation, it infringes these provisions of the constitution. We must take judicial knowledge that there is only one county in the state whose population places it in the eighth class, and if an act is passed by the legislature that is applicable to only one county in the state, it does not cease to be a local act by reason of the fact that it purports to be applicable to a class of counties which the legislature is not authorized to create for the purpose of such legislation, and of which that county constitutes the only member.

The judgment is affirmed.

DE HAVEN, J., FITZGERALD, J., GAROUTTE, J., and BEATTY, C. J., concurred.