[Sac. Nos. 92, 181, 214. In Bank.—September 17, 1897.]

TULARE COUNTY, Appellant, v. E. A. MAY, et al., Respondents. TULARE COUNTY, Appellant, v. E. M. JEFFERDS, et al., Respondents. GUY GILMER, et al., Respondents, v. E. M. JEFFERDS, Defendant. TULARE COUNTY, Intervenor, Appellant.

Counties—Public Officers—Salaries of Deputies—Constitutional Law—Act of 1893.—The provisions of section 173 of the County Government Act of 1893 (Stats. 1893, pp. 415, 416), empowering certain of the county officers in counties of the eleventh class to appoint a specified number of deputies, whose salaries are fixed by the act and made payable out of the county treasury, are not in conflict with section 11 of article I of the constitution, requiring all laws of a general nature to have a uniform operation, notwithstanding other provisions of the act, affecting counties of different classes. require the salaries of such deputies to be paid by their principals out of the gross sum allowed them for their compensation; nor with the various subdivisions of section 25 of article IV, forbidding the legislature to pass local or special laws in the cases enumerated therein; nor with the provisions of sections 4 and 5 of article XI, requiring the establishment of county governments, and the election or appointment of county officers, to be by general and uniform laws; nor. with section 13 of the same article, prohibiting the legislature from delegating the power to make, control, appropriate, supervise, or in any way interfere with any county, city, town, or municipal improvement, money, property, or effects; nor with section 9 of article XI, forbidding any increase of compensation after election of public officers.

Id.—Deputy Assessors.—The provisions of subdivision 21 of section 173 of such act, authorizing the assessor in counties of the eleventh class to appoint a number of deputies during the months of March, April, May, and June, at a salary of five dollars per diem, but not expressly providing for their payment by the county, should be construed as authorizing their payment out of the county treasury, in view of the provisions of section 216 of the act, as a contrary construction would necessitate the payment thereof by the assessor, out of his salary, whch is fixed by the act at an amount which is entirely insufficient for such purpose.

118 303
125 193

118 303
h128 248

118 303
131 390

118 303
135 652

118 303
o137 162

118 303
141 727

118 303
f148 751

ID.—CREATION OF ADDITIONAL JUDGESHIP.—The provisions of section 216 of the act, authorizing the appointment of one additional deputy sheriff and two additional deputy clerks in any county in which an additional judge of the superior court is provided for, is general and uniform in its operation, and applies to the whole state, and takes effect in any county whenever an additional judgeship is created therein. Such provisions are constitutional.

APPEALS from judgments of the Superior Court of Tulare County. J. R. Webb, Judge.

The facts are stated in the opinion of the court.

Lamberson & Middlecoff, and Power & Alford, for Appellant, Tulare County.

E. O. Larkins, for Appellant Jefferds.

W. B. Wallace, for Respondents.

BEATTY, C. J.—These three appeals involve one and the same principal question, viz., the constitutionality of certain provisions of the County Government Act of 1893 relating to the appointment and salaries of various deputy officers in counties of the eleventh class, in which Tulare county stands alone. The first is from a judgment dismissing a suit to enjoin the county treasurer from paying the salaries in question; the second is from a similar judgment in a suit to enjoin the county auditor from drawing salary warrants; and the third is from a judgment awarding a peremptory writ of mandate to the auditor to draw his warrants for such salaries. If the provisions referred to are constitutional, the judgments should all be affirmed; if unconstitutional, the judgments must all be reversed.

The provisions of the act governing the compensation of officers of counties of the eleventh class (Tulare county) are to be found on pages 415 and 416 of the Statutes of 1893, and are as follows:

"Sec. 173. In counties of the eleventh class the county officers shall receive as compensation for the services required of them by law, or by virtue of their office, the following salaries, to wit: 1. The county clerk, three thousand dollars per annum; 2. The sheriff, eight thousand five hundred dollars per annum, and mileage for the service of any and all process required by law to be served by him, at the rate of ten cents per

mile for every mile necessarily traveled in the performance of such duty; 3. The recorder, two thousand dollars per annum, and six cents per folio for every instrument of any character transcribed by him or his deputies, which said amounts shall be paid out of the county treasury; 4. The auditor, two thousand dollars per annum; 5. The treasurer two thousand dollars per annum; 6. The tax collector, five thousand dollars per annum; 7. The assessor, eighteen hundred dollars per annum; 8. The district attorney, two thousand four hundred dollars per annum; . . . . 11. The superintendent of schools, one thousand eight hundred dollars per annum; . . . . 17. The county clerk may appoint three deputies, who shall receive from the county a salary of one thousand and twenty dollars per annum each; 18. The district attorney may appoint one deputy, who shall receive from the county a salary of fifteen hundred dollars per annum; also, one deputy, who shall receive from the county a salary of twelve hundred dollars per annum; 19. The recorder may appoint one deputy, who shall receive from the county a salary of twelve hundred dollars per annum; 20. The superintendent of schools may appoint one deputy, who shall receive from the county a salary of one thousand and twenty dollars per annum; 21. The assessor may appoint fourteen deputies for the months of March, April, and May, at a salary of five dollars per day. He may also appoint six deputies for the month of June, at a salary of five dollars per day."

It is contended by the appellant that all of the above quoted provisions empowering the sheriff, district attorney, clerk, etc., to appoint deputies, and requiring the payment of their salaries out of the county treasury, are void because in conflict with the various clauses of the Constitution:

1. It is claimed they are in conflict with section 11 of article I, which provides that "all laws of a general nature shall have a uniform operation," the position of counsel being that the County Government Act of 1893 is a general law "prescribing the powers and duties of officers in counties (Const., art. IV, sec. 25, subd. 28), and that its uniform operation is destroyed by the exceptional privilege conferred upon the officers of fourteen classes, including the eleventh class, of appointing deputies whose salaries are to be paid out of the county treasury, while

in the remaining thirty-eight classes all deputies are to be paid by their principals out of the gross sum allowed for their compensation.

Upon the same grounds it is contended that these provisions of the County Government Act are in conflict with various subdivisions of section 25, article IV, forbidding the legislature to pass local or special laws in any of the following enumerated cases: "9. Regulating county and township business, or the election of county and township officers." 19. Granting to any corporation, association or individual any special or exclusive right, privilege or immunity." "28. Creating offices or prescribing the powers and duties of officers in counties, cities, cities and counties, townships, election or school districts." "29. Affecting the fees or salary of any officer." "33. In all other cases where a general law can be made applicable."

To sustain his position counsel for appellant cites a number of decisions of this court, but I think none of them are in point except *Welsh v. Bramlett*, 98 Cal. 219, and *Walser v. Austin*, 104 Cal. 128.

In the case of *Welsh v. Bramlett, supra,* I concurred in the decision and in the opinion of Justice Harrison, but I did not at the time place the construction upon that part of the opinion commencing at page 234 which upon a more careful reading I can see that it bears, and upon which it was followed by Department Two in *Walser v. Austin, supra.* The case of *Welsh v. Bramlett, supra,* was correctly decided upon the first ground discussed in the opinion of Justice Harrison—that is to say, upon the ground so fully and carefully considered in *Dougherty v. Austin*, 94 Cal. 601. This being so, the proposition discussed under the second head of Justice Harrison's opinion was unnecessary to the decision and for that reason no doubt received less consideration than its importance demanded. In *Walser v. Austin, supra,* the Department simply followed the decision of the full court in *Welsh v. Bramlett, supra.* There was no petition for a rehearing of that case, and the proposition involved has never received any further consideration by the full court, or either department of the court, than was given to it in *Welsh v. Bramlett, supra,* where, as I have said, its decision was not necessary. In the case of *Farnum v. Warner*, 104 Cal. 677·

also decided in Department, after the decision of *Walser* v. *Austin*, *supra*, the statute in question presented the same supposed infirmity that was held fatal in *Walser* v. *Austin*, *supra*, but it was held to be a valid enactment. In this case also there was no request for a rehearing in Bank, and no reconsideration of the matter by the full court. The result is, that the point here involved has never received the serious attention which it deserves in view of the consequences involved in its determination, and being convinced, upon a fuller examination of the subject, that the opinion expressed in *Welsh* v. *Bramlett*, *supra*, was erroneous, and that no harm or confusion can now result from a correction of the error, I shall state my reasons for concluding that the provisions of the act of 1893 here in question are not in conflict with the above cited clauses of the constitution.

To allow county officers to appoint deputies whose fixed salaries are to be paid out of the county treasury is, of course, unobjectionable so far as the mere power to appoint deputies is concerned, for by section 61 (Stats. 1893, p. 367) these same officers are authorized to appoint as many deputies as a prompt discharge of the duties of their respective offices may require, and this general authorization embraces all of the special authority conferred by the clauses of section 173 above quoted. That is to say, these officers may, under section 61, appoint the same deputies that they are allowed to appoint under section 173, and they are not obliged under either section to appoint any more deputies than a prompt discharge of the duties of the office may require. These sections do not destroy the uniformity of the law, nor do they introduce any special regulation in counties of the eleventh class. So far as the power to appoint deputies is concerned the rule is general and uniform throughout the state, and that rule is that such county officers as are allowed to act by deputy may everywhere appoint as many deputies as a prompt discharge of their official duties demands. But this, as I am fully aware, does not meet the objection of appellant, which is that in this instance the officers are allowed to appoint deputies whose salaries are to be paid out of the county treasury. This objection would be more serious, it seems to me, if the law contemplated the payment of salaries of deputies from any other source. But it does not.

There are two rules for the compensation of deputies in the different counties of the state. In most of the classes a lump sum is allowed to the principal, out of which he is required to pay his deputies; in a smaller number of classes—including the eleventh—the principal is allowed a fixed salary, and certain deputies are allowed fixed salaries, but in both cases the salaries of all are by the express terms of the statute, to be paid out of the county treasury. The whole question, therefore, resolves itself into this: Can the legislature establish one rule of compensation of deputies in one class of counties, and a different rule in another class of counties? I can see no constitutional objection to such an exercise of power. Under either rule a compensation proportionate to duties may be secured; and for the purpose of securing such compensation a division of counties into classes is expressly authorized, and, when a statute or a provision of a statute has no other object or effect than to regulate compensation of officers, the provision or statute is uniform and general if it applies equally to all the counties of any class, no matter which of the two rules above referred to is followed.

2. What has been said is also a sufficient answer to the contention that the provisions of section 173 are in conflict with sections 4 and 5 of article XI of the constitution.

3. Section 13 of the same article is as follows:

"Sec. 13. The legislature shall not delegate to any special commission, private corporation, company, association, or individual any power to make, control, appropriate, supervise, or in any way interfere with any county, city, town, or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments, or perform any municipal functions whatever." The objection that the provisions of section 173 of the act are in conflict with this clause of the constitution is based upon the contention that they give the designated officers the power to control and appropriate county revenues. I see no force in this objection. These officers do not control or appropriate any county money—they are merely vested with a discretionary power to incur expenses within a fixed maximum, which expenses, when incurred, become a county charge. Such a discretionary power is frequently reposed in public officers by general laws, and since the power

conferred in this case is only for the purpose of regulating official salaries, the law is a general law because it applies to all counties of the class which the legislature is empowered to make for the purpose of regulating official salaries.

4. The provisions of section 173 are not in conflict with section 9 of article XI, which forbids any increase of compensation after election of public officers. They have no such effect.

This disposes of all questions arising upon section 173 of the statute, except those relating to salaries of deputy assessors. By subdivision 21 above quoted it will be seen that the assessor is authorized to appoint a number of deputies during the months of March, April, May, and June, at a salary of five dollars per diem, but it is not expressly provided that they shall be paid by the county. By section 216 it is enacted that "the salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or ex officio officers, their deputies and assistants, unless in this act otherwise provided." It is contended that the salaries of the deputy assessors cannot be paid out of the county treasury, because the rule is that all deputies must be paid out of the salary allowed to the principal, unless in this act otherwise provided, and here, it is said, there is no provision for their payment in any other manner. The decision of this point involves a construction of subdivision 21 of section 173, supra.

It is true that it is not therein expressly declared that these deputies shall be paid out of the county treasury, but unless that was the intention of the legislature the clause means nothing, or, if it means anything, it is an absurdity. Without this clause the assessor could appoint all the deputies it provides for, and more if he chose to do so, but he would have to pay them himself. Evidently, then, the legislature intended something more than merely to empower him to appoint and pay deputies, for it is a cardinal rule of construction that every clause of a statute is to be given some effect. If, then, it is to be given effect, and is at the same time to be denied the effect of authorizing the payment of the deputies out of the county treasury, it can mean only this: that the assessor, out of a salary of eighteen hundred dollars per annum and some small percentage, is required by the

legislature to pay his deputies five dollars per day, a payment which for the number of deputies authorized would far exceed the whole income of the office. We cannot attribute this absurd intention to the legislature, and we cannot say that by this clause of the statute they intended nothing in addition to what was already fully provided for. The only conclusion possible is that they intended the deputies to be paid out of the county treasury.

5. One deputy sheriff and two deputy clerks were appointed under the provisions of section 216 of the act, which allows one additional deputy sheriff and two additional deputy clerks to be appointed in any county in which an additional judge of the superior court is provided for.

It is contended that this provision of the law is unconstitutional because it is not general and uniform. But it is general and uniform. It applies to the whole state, and takes effect in any county immediately upon the happening of the condition upon which its operation depends, viz., whenever an additional judgeship is created.

The judgment in each case should be affirmed, and it is so ordered.

McFarland, J., Henshaw, J., Temple, J., and Van Fleet, J., concurred.

Garoutte, J., concurred in the judgment.