[S. F. No. 10513. In Bank.—March 21, 1923.]

## CHARLES L. WINES, Petitioner, v. E. F. GARRISON, as Auditor, etc., Respondent.

[1] STATUTORY CONSTRUCTION — CONSTITUTIONAL LAW. — Every statute must be construed in the light of the constitutional restrictions upon the power of the legislature.

[2] PUBLIC OFFICERS—COMPENSATION OF DEPUTIES—CONSTRUCTION OF SECTION 4290, POLITICAL CODE.—Section 4290 of the Political Code, providing that salaries and fees provided in that title shall be in full compensation for all services rendered by the officers named, their deputies and assistants, unless otherwise specified, and that all deputies shall be paid by their principals out of the salaries of the latter, unless otherwise provided, is applicable to counties in which deputies are authorized to be paid directly from the county treasury.

[3] ID.—INCREASE OF COMPENSATION DURING TERM—ADDITIONAL DEPUTY—CONSTITUTIONAL LAW.—A statute passed during the term of a public officer authorizing the payment of an additional deputy from the county treasury is an increase of salary within the meaning of the constitutional inhibition, whether the officer was originally paid a lump sum or was, in addition to his own compensation, allowed a certain number of deputies paid by the county.

APPLICATION for a Writ of Mandate directed to the Auditor of Alameda County to compel him to audit a demand. Writ denied.

The facts are stated in the opinion of the court.

Fitzgerald, Abbott & Beardsley for Petitioner.

Ezra W. Decoto and Frank Mitchell, Jr., for Respondent.

WILBUR, C. J.—This is an original application for a writ of *mandamus*. Charles L. Wines, the petitioner, is a deputy in the office of the superintendent of schools of Alameda County. When the superintendent of schools began his term on January 6, 1919, he was allowed an assistant, a

3. Provision for compensation of additional deputy or assistant as violation of constitutional inhibition of increase of officer's salary during term, note, L. R. A. 1918C, 561.

chief deputy and an additional deputy, but in 1921 the legislature allowed the superintendent of schools an additional deputy. The petitioner fills the position thus created for the first time by the legislature of 1921. His petition, he says, "involves the right of the legislature to increase the number of deputies allowed to a county officer, who at the commencement of his term has a fixed salary and deputies paid by the county."

This question was determined adversely to the contention of the petitioner in the recent case of *Forward* v. *County of San Diego*, 189 Cal. 704 [209 Pac. 993]. The decision was by the court in Bank and a petition for rehearing was denied, after due consideration.

The petitioner seeks to have us overrule this decision, claiming that we have therein given an erroneous construction to section 4290 of the Political Code. He also contends that the matter is of very great importance to counties and county officers, and for that reason prays a careful reconsideration of the matter.

We have therefore again considered the question which is presented by the petitioner. The respondent makes no argument and presents no brief.

We will not undertake to follow the argument of the petitioner in detail. Suffice it to say that the petitioner contends that the question involved here is not one of constitutional law but primarily one of statutory interpretation, and that section 4290 of the Political Code in the light of its legislative history beginning with the enactment of the first County Government Act in 1883 (Stats. 1883, p. 299) down to date shows that the provisions of section 4290 of the Political Code do not apply to Alameda County wherein the legislature has provided for deputies to be paid directly from the county treasury. This legislation originally was in the form of a separate act known as the County Government Act and in 1907 was for the first time incorporated in the Political Code, sections 4000 to 4235, inclusive (Stats. 1907, pp. 354–558). We will, therefore, use the expression "County Government Act" and "Political Code" indifferently throughout this opinion in referring to the provisions of the statute controlling the salaries of county officers. The first clause of section 4290 of the Political Code reads as follows: "The salaries and fees provided in this title

shall be in full compensation for all services of every kind and description rendered by the officers named in this title either as officers or *ex-officio* officers, their deputies and assistants, unless in this title otherwise provided, and all deputies employed shall be paid by their principals out of the salaries provided in this title, unless in this title otherwise provided. . . ."

As we construed this section in *Forward* v. *County of San Diego, supra,* the phrase "unless in this title otherwise provided" referred to the provisions made for the payment of deputies in the County Government Act and we held that where assistants were appointed who were not specifically provided for in the County Government Act, they could not be paid from the county treasury, but must be paid by the officer, if paid at all. Consequently, it followed under numerous prior decisions of this court that where the legislature relieved the officer of that necessity by making the salary of the deputy payable by the county, it, to that extent, *ipso facto* increased his salary.

The argument now advanced to support a different conclusion is substantially as follows: The phrase "unless in this title otherwise provided" in section 4290 of the Political Code, in the light of the history of the section, applies to those counties such as Alameda County, wherein provision is made for the payment of deputies by the county instead of by the county officers. Consequently, it is urged that where under the code a county officer is allowed any deputy payable from the county treasury, in his case it is "otherwise provided" in the title and consequently the requirement in the section that the officer must pay such deputy does not apply and therefore the legislature may provide for an additional deputy who may also be paid from the county treasury without increasing the compensation of the officer.

[1] It is true in one sense that this is a question of statutory construction, but it is also true that every statute must be construed in the light of the constitutional restrictions upon the power of the legislature so that it is necessary to consider those constitutional provisions in arriving at the proper interpretation of the statute.

Petitioner's argument proceeds somewhat in this fashion. Section 164 of the County Government Act of 1883 (Stats. 1883, p. 361) provided as follows:

"The salaries and fees provided for in this Act shall be in full compensation for all services of every kind and description rendered by the officers therein named, their deputies, and assistants; and all deputies employed shall be paid by their principals, out of the salaries hereinbefore provided; . . ." Section 163, subdivision 15, of this act (page 339), in providing for salaries of the seventh class provided that a limited number of deputies should be paid salaries from the county. It is pointed out that this provision in section 164 is inconsistent with the one providing for the payment of deputies by the county itself and, therefore, the argument is that section 164 was intended to apply only to counties in which a lump sum was fixed as the salary of the officer, and not to counties where the county pays the deputies directly.

The petitioner's argument proceeds upon the theory that there are two classes of counties in the County Government Act, one in which the county officers are paid a lump sum and the other in which the deputies are paid directly by the county and presumptively the amount allowed to the county officer is for his own personal services. This position cannot be maintained under the previous decisions of this court. The County Government Act never has used the phrase "a lump sum" and this nomenclature was introduced into our legal literature in connection with the alleged unconstitutionality of the County Government Act in providing in some counties for deputies to be paid by the county and in others that all deputies should be paid by the principal, it being contended that this differentiation destroyed the uniformity of county government required by the constitution (*Tulare County* v. *May,* 118 Cal. 303 [50 Pac. 427]).

The question involved in the case at bar was decided against the petitioner, in principle at least, in 1892 in the case of *Dougherty* v. *Austin,* 94 Cal. 601 [16 L. R. A. 161, 28 Pac. 834, 29 Pac. 1092].)

Section 164 of the County Government Act of 1883 (Stats. 1883, p. 361) was renumbered as section 211 (Stats. 1885, p. 194) and was amended in 1887 (Stats. 1887, p. 207). By this amendment a proviso was inserted after the above-quoted language as follows: *"and provided further,* that whenever, in the opinion of the Board of Supervisors, the salary of any county officer in the third, fourth, fifth,

twelfth, thirteenth, fifteenth, twentieth, twenty-second, twenty-third, twenty-fourth, twenty-sixth, twenty-ninth, thirty-second, thirty-third, thirty-fourth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth and forty-first classes, as fixed and provided in this Act, is insufficient to pay a reasonable compensation for the services required to be performed, the said Board shall allow such officer a deputy, or such number of deputies, as in their judgment may be required to do the business of such office, in connection with the principal, at a salary not to exceed one hundred dollars per month, to be paid at the times and in the manner that said principal is paid; . . ."

The effect of these provisions was considered in the case of *Dougherty* v. *Austin*, 94 Cal. 601 [16 L. R. A. 161, 28 Pac. 834, 29 Pac. 1092], decided in May, 1892. Upon the original hearing it was held that this provision of the law violated article XI, section 9, of the constitution, prohibiting an increase of salary during the term of office. Owing to the importance of the matter a rehearing was granted, the same was carefully considered, and the court reaffirmed its original conclusion. In the original opinion it was said (94 Cal. 611 [16 L. R. A. 161, 29 Pac. 1095]) : "The sum allowed to any given officer being a lump sum out of which he must pay for the services of all deputies and assistants necessary for the prompt and faithful discharge of all the duties of the office, it is evident that his own compensation consists of the residue remaining after payment of such deputies and assistants; and it is equally evident that just so far as the county assumes the payment of such deputies and assistants, such residue is enlarged and the compensation increased."

It was thus early established that the allowance of additional deputies to be paid by the county to an officer who was receiving a lump sum under the County Government Act, and who was by the provisions of section 211 of the County Government Act required to pay all deputies and assistants from such salary, was unconstitutional because it increased the salary of the officer. This view has ever since been consistently adhered to by this court and in the late case of *County of Santa Barbara* v. *Janssens*, 177 Cal. 114 [L. R. A. 1918C, 558, 169 Pac. 1025], decided December 31, 1917, although the legislature by enacting a new section

of the Penal Code (sec. 1616 as added by Stats. 1911, p. 924, amended by Stats. 1917, p. 240), required the sheriff of every county to appoint a matron for the women's department of the county jail, it was held that the sheriff was required to pay such matron (*Humiston* v. *Shaffer,* 145 Cal. 195 [78 Pac. 651]).

In *Welsh* v. *Bramlet,* 98 Cal. 219 [33 Pac. 66] it was held that an allowance of an assistant district attorney to the district attorney of Fresno County after his election to office was unconstitutional as being a violation of article XI, section 9, prohibiting an increase of salary to an officer during his term of office. It was also held that the provision of the statute authorizing the district attorney to appoint an assistant to be paid by Fresno County, when the district attorneys of other counties could not do so, was a violation of the constitutional provision requiring uniformity in county governments. The decision on this latter point was followed in *Walser* v. *Austin,* 104 Cal. 128 [37 Pac. 869] (decided September, 1894), and in *Farnum* v. *Warner,* 104 Cal. 677 [38 Pac. 421].

The serious consequences of these last three decisions resulted from the fact that if the law was not uniform, the entire County Government Act, at least as to salaries, was void. Indeed, it was claimed to be void in *Tulare County* v. *May,* 118 Cal. 303 [50 Pac. 427] (decided September, 1897). The court there declined to follow and overruled the prior decisions in *Welsh* v. *Bramlet, supra,* and *Walser* v. *Austin, supra,* and also the decision in *Farnum* v. *Warner, supra,* to the effect that there were two systems provided for in the County Government Act for the payment of deputies, and that it was therefore void for lack of uniformity. The court there held that a scheme of county government by which in some counties or classes of counties the deputies were paid directly from the county treasury, where in others they were not so paid, was nevertheless a uniform system of county government and for that reason did not violate the provisions of article I, section 11, or article IV, section 25, subdivision 28, of the constitution, requiring such uniformity.

It is important to the point under consideration, however, to recognize the basis upon which the court overruled *Welsh* v. *Bramlet, supra, Walser* v. *Austin, supra, Farnum*

v. *Warner, supra,* and held that the County Government
Act with these two distinct systems of paying deputies was
a uniform system and complied with article XI, sections 4
and 5, of the constitution with reference to the duty of the
legislature in the establishment of county governments. In
order to appreciate the force of this decision it will be neces-
sary to quote from it extensively:

"To allow county officers to appoint deputies whose fixed
salaries are to be paid out of the county treasury is, of
course, unobjectionable so far as the mere power to appoint
deputies is concerned, for by section 61 (Stats. 1893, p. 367)
these same officers are authorized to appoint as many depu-
ties as a prompt discharge of the duties of their respective
offices may require, and this general authorization embraces
all of the special authority conferred by the clauses of
section 173 above quoted. [Section 173 is the section fixing
the compensation of officers in counties of the eleventh class
and allowing certain deputies to be paid from the county
treasury.] That is to say, these officers may, under section
61, appoint the same deputies that they are allowed to ap-
point under section 173, and they are not obliged under
either section to appoint any more deputies than a prompt
discharge of the duties of the office may require. These
sections do not destroy the uniformity of the law, nor do
they introduce any special regulation in counties of the
eleventh class. So far as the power to appoint deputies is
concerned the rule is general and uniform throughout the
state, and that rule is that such county officers as are al-
lowed to act by deputy may everywhere appoint as many
deputies as a prompt discharge of their official duties de-
mands. But this, as I am fully aware, does not meet the
objection of appellant, which is that in this instance the
officers are allowed to appoint deputies whose salaries
are to be paid out of the county treasury. This objection
would be more serious, it seems to me, if the law contem-
plated the payment of salaries of deputies from any other
source. But it does not.

"There are two rules for the compensation of deputies
in the different counties of the state. In most of the classes
a lump sum is allowed to the principal, out of which he is
required to pay his deputies; in a smaller number of
classes—including the eleventh—the principal is allowed a

fixed salary, and certain deputies are allowed fixed salaries, but in both cases the salaries of all are by the express terms of the statute, to be paid out of the county treasury. The whole question, therefore, resolves itself into this: Can the legislature establish one rule of compensation of deputies in one class of counties, and a different rule in another class of counties? I can see no constitutional objection to such an exercise of power. Under either rule a compensation proportionate to duties may be secured; and for the purpose of securing such compensation a division of counties into classes is expressly authorized, and, when a statute or a provision of a statute has no other object or effect than to regulate compensation of officers, the provision or statute is uniform and general if it applies equally to all the counties of any class, no matter which of the two rules above referred to is followed.''

The argument of the court in sustaining the uniformity of the County Government Act is substantially this: In all counties all deputies are in effect paid from the county treasury. It does not destroy the uniformity of the County Government Act to pay some of these deputies directly from the county treasury, while in other counties the money passes through the hands of the officer to the deputy. It is obvious that this argument leads to the conclusion that in both counties additional deputies are to be paid by the officer from his own compensation. Otherwise, we at once have the uniformity of the system destroyed because we have two different classes of counties, in one the legislature may from time to time give additional deputies to the officers without violating the constitutional inhibition and without increase of compensation, while in others it cannot. We called attention to this situation in *Forward* v. *County of San Diego, supra.*

In *San Francisco* v. *Broderick*, 125 Cal. 188 [57 Pac. 887], the supreme court had under consideration the question of the payment of deputies by the county clerk of the city and county of San Francisco. It was contended that certain deputies appointed by the county clerk should be paid under the provisions of certain acts of the legislature applicable to the county of San Francisco alone. In that case the court pointed out the fact that there are two plans or

schemes provided in the County Government Act for the payment of the deputies. It cited section 216 (Stats. 1893, p. 507; Stats. 1897, p. 572), which corresponds to section 164 of the County Government Act of 1893, and section 211 of the amendments of 1897 and section 4290 of the Political Code. In answer to the contention that the county clerk of the city and county of San Francisco could appoint deputies whose salaries would be a charge upon the county government under the provisions of the act of 1880 (Stats. 1880, p. 5, and Stats. 1891, p. 5), the court said: "The county clerk of the city and county of San Francisco by the act of February 13, 1880 (Stats. 1880, p. 5), is given a fixed salary, and is allowed a fixed number of deputies and assistants, whose compensation is a charge upon the treasury. He has the power under section 61 of the County Government Act to appoint additional deputies and assistants if the needs of his office so require, but in the present condition of the law the compensation of these extra assistants and deputies must be paid for by himself."

As we understand this decision it holds that notwithstanding the fact that the city and county of San Francisco was of a class in which the principal officer was allowed certain deputies, that he was required under the provisions of section 216 of the County Government Act of 1893 to pay any additional deputies and assistants himself. This is a complete answer to the contention of the petitioner that section 216 or its successor (Pol. Code, sec. 4290) does not apply to counties of the class in which a county officer is allowed paid deputies. If in such counties the county officer was required to pay all deputies in addition to those provided by law, it follows that any statutory scheme by which he is relieved of that responsibility is to that extent an increase of his salary within the meaning of the constitution. This squarely brings such counties within the rule announced in *Welsh* v. *Bramlet, supra,* and *Dougherty* v. *Austin, supra.*

In *County of Calaveras* v. *Poe,* 167 Cal. 519 [140 Pac. 23], it was held to be the fixed and settled law of this state that the allowance of a deputy to an officer who had theretofore received a gross sum to cover his compensation and the expenses of his office was a violation of the constitution if made during his term of office (citing *Dougherty* v. *Austin, supra; Humiston* v. *Shaffer,* 145 Cal. 195 [78 Pac. 651];

*Elder* v. *Garey,* 19 Cal. App. 776 [127 Pac. 826]; *Hanson* v. *Underhill,* 12 Cal. App. 546 [107 Pac. 1016], and *Applestill* v. *Gary,* 18 Cal. App. 387 [123 Pac. 228]). This was the only point involved in the case, for in that instance the officer was allowed a gross sum. The court proceeded, however, to say: "Where the statute provides a fixed salary for an officer and fixed salaries for deputies, all payable out of the county treasury, a subsequent law increasing the compensation of the deputies or their number will take effect at once. (*Tulare County* v. *May,* 118 Cal. 304 [50 Pac. 427]; *Newman* v. *Lester,* 11 Cal. App. 577 [105 Pac. 785])." This statement was *obiter dicta* and is not supported by *Tulare County* v. *May, supra,* and is clearly incorrect for the reasons we have hereinbefore stated, namely, that in every county all assistants and deputies not specifically provided for by an award of compensation in the statute are to be paid by the officer himself and, therefore, to pay them from the county treasury would be an increase of compensation in violation of the constitution where such allowance is made during his term of office.

[2] We have thus far dealt with the proposition advanced by the petitioner that section 4290 of the Political Code did not justify the conclusion that its language was applicable to counties in which deputies were provided and authorized to be paid directly from the treasury by the County Government Act. But other considerations lead to the same conclusion. In order that public funds may be expended it is essential that such expenditure be authorized by law, as was said by this court in *Irwin* v. *County of Yuba,* 119 Cal. 686, 690 [52 Pac. 35, 37]: ". . . Whenever the courts have been appealed to in these cases, they have uniformly held to the only safe rule—that public officers and municipal boards must keep within the limits of their power as prescribed by law. . . . Nothing is better settled than that a person who accepts an office with compensation fixed by law is bound to perform the duties for the compensation. Mr. Dillon in his Municipal Corporations, section 233, speaking of this rule, says: 'The rule is of importance to the public. To allow changes and additions in the duties properly belonging or which may properly be attached to an office to lay the foundation for extra compensation, would soon introduce intolerable mischief. The rule, too, should be very rigidly enforced. The statutes of

'the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may, and what may not, be considered strictly official; and if these distinctions are much favored by the courts of justice it may lead to great abuse.' Again, the same author says (section 234): 'Not only has an officer, under such circumstances no legal claim for extra compensation, but a promise to pay him an extra fee or sum, beyond that fixed by law, is not binding, though he renders services and exercises a degree of diligence greater than could legally have been expected of him.'" Hence, unless the statute expressly authorizes the payment of deputies from the county treasury they cannot be so paid. By section 59 of the County Government Act, above quoted, and the corresponding section of the Political Code (sec. 4024) the officer has the authority to appoint as many deputies and assistants as may be necessary to enable him to perform the duties of his office. This would be the rule without any statutory authority. (*Taylor* v. *Brown,* 4 Cal. 188 [60 Am. Dec. 604]; *Jobson* v. *Fennell,* 35 Cal. 711.) These deputies, however, cannot be paid from the public treasury unless some express provision is made for such payment.

[3] If it is conceded, as it must be under the authorities above quoted, that to prevent the inevitable decrease of the officer's salary due to payments necessary to be made by such officer to a necessary deputy by authorizing the county to pay such deputy is an increase of the salary of the officer within the meaning of the constitutional inhibition against increasing the salary of an officer during his term of office, then it must follow that without the express statutory declaration in section 4290 of the Political Code, requiring the officer to pay all additional deputies not otherwise provided for, that a statute passed during his term of office authorizing the payment of such additional deputy from the county treasury is an increase of salary within the meaning of the constitutional provision, no matter whether the officer was originally paid a lump sum or was, in addition to his own compensation, allowed a certain number of deputies paid by the county. If there is an error in this process of reasoning it arises from the conclusion long ago arrived

at by this court that to prevent an inevitable decrease of salary is an increase of compensation within the meaning of the constitution. This question has been too long settled in this state to justify its reconsideration.

The petition is denied.

Lennon, J., Kerrigan, J., Myers, J., Lawlor, J., and Waste, J., concurred.