[S. F. No. 10512. In Bank.—March 24, 1923.]

A. C. BAYLEY, Petitioner, v. E. F. GARRISON, as Auditor, etc., Respondent.

[1] PUBLIC OFFICERS—INCREASE OF PAY OF DEPUTY—CONSTITUTIONAL LAW.—Increase of the pay of existing deputies of a public officer, during the term of the principal, in cases where the principal

---

Change of salary of deputy or other subordinate as violation of constitutional provision against change of salary of public officer during term of office, note, 37 L. R. A. (N. S.) 388.

at the commencement of his term was given a fixed salary and allowed deputies, also with fixed salaries, and all paid out of the county treasury, does not violate the provisions of section 9 of article XI of the state constitution, which prohibits the increase of the salary of an officer during his term.

PROCEEDING in Mandamus to compel the Auditor of Alameda County to audit demand for salary. Writ granted.

The facts are stated in the opinion of the court.

Fitzgerald, Abbott & Beardsley for Petitioner.

Ezra W. Decoto and Frank Mitchell, Jr., for Respondent.

WILBUR, C. J.—This is an original proceeding in *mandamus* brought by a deputy in the office of the county clerk of Alameda County whose position existed before the county clerk took office on January 6, 1919, but whose compensation was increased by the legislature of 1921, during the term of the office of the county clerk. The point involved, as stated in the petitioner's points and authorities, is as follows: "His petition involves the question as to the right to increase the pay of existing deputies, during the term of the principal, in cases, where the principal at the commencement of his term was given a fixed salary and allowed deputies, also with fixed salaries, and all paid out of the county treasury."

That question was determined in favor of the petitioner's contention in the case of *Harrold* v. *Barnum*, 8 Cal. App. 21 [96 Pac. 104]. In addition to the authorities cited in that opinion in support of the view there expressed the following cases may be cited: *Board of Commrs. of Muskogee County* v. *Hart*, 29 Okl. 693 [37 L. R. A. (N. S.) 388, 119 Pac. 132]; *State* v. *Oklahoma City*, 38 Okl. 349 [134 Pac. 58]; *State ex rel. Rumbold* v. *Gordon*, 238 Mo. 168 [Ann. Cas. 1913A, 312, 142 S. W. 315]; *Bowers* v. *City of Albuquerque*, 27 N. M. 291 [200 Pac. 421]; *Stone* v. *State*, 18 Ala. App. 228 [89 South. 824]; *Quernheim* v. *Asselmeier*, 296 Ill. 494 [129 N. E. 828]; *People* v. *Stong*, 67 Colo. 599 [189 Pac. 27]; *Hibbard* v. *Suffolk County*, 163 Mass. 34 [39 N. W. 285].

The general rule is thus stated in 37 L. R. A. (N. S.) 589 as follows: "The general rule, however, seems to be that this constitutional prohibition against changing the salary of a public officer during his term of office applies only to officers who have a fixed and definite term, and does not apply to appointive officers, who hold only at the pleasure of the appointing power."

[1] It is clear, then, that so far as the increase of salary to the deputy is concerned it is not violative of article XI, section 9, of the constitution, which prohibits the increase of the salary of an officer during his term of office, for the reason that such deputy has no term of office within the meaning of the constitutional provision.

Does the increase of the salary to a deputy increase the salary of the officer appointing the deputy? In considering this question it should be observed at the outset that the Penal Code (sec. 74a) makes it a felony for the officer to directly or indirectly receive or accept any part of the compensation of his deputy. That section provides as follows: "Every officer of this state, or of any county, city and county, city, or township therein, who accepts, keeps, retains or diverts for his own use or the use of any other person any part of the salary or fees allowed by law to his deputy, clerk, or other subordinate officer, is guilty of a felony."

It is clear, then, that whatever advantage the officer may derive from the fact that his deputy has an increased salary is not a direct benefit, but arises, if at all, from the securing of more valuable or competent help than could be obtained for the lesser amount. Is this advantage an increase of his compensation within the meaning of the constitution? So far as we know this point has never been decided adversely to the constitutionality of an increase of compensation to the deputy because of whatever incidental advantage might result to the principal. The point does not seem to have been considered sufficiently important to have been even suggested in any of the cases. Perhaps the outstanding reason for this is that it is by no means clear that the additional compensation to the deputy is an advantage to the principal, and because the fixing of a salary to the deputy is altogether taken out of the hands of the principal and there is no means of ascertaining whether he could do

better or worse for himself financially by the selection and payment of the deputy out of his own salary. Perhaps the antithesis of the proposition under consideration will be helpful in reaching a conclusion. The constitution of many of the states prohibit the increase or the decrease of the salary of a public officer as ours does in the case of certain state officers (Const., art. V, sec. 19). It has been held that the decrease of the salary of a deputy is permissible notwithstanding this constitutional provision (*Somers* v. *State,* 5 S. D. 321 [58 N. W. 804]; Id.; 5 S. D. 585 [59 N. W. 962]). It seems clear that the legislature could decrease the compensation of a deputy, at least to a reasonable extent, without in anywise affecting the compensation of the principal. If the same deputy continued to work for the reduced compensation it is evident that the salary of the principal would not thereby be reduced. If the volume of the work of the county officer was so reduced that the number of deputies supplied to him was wholly unnecessary, it would seem clear that to take away the salary provisions for such unnecessary deputies would not constitute a reduction of his salary. For instance, if the legislature should provide that the registration of voters should occur every four years instead of every two years, and should make a corresponding reduction in the office force of the county clerk or registrar of voters, this would hardly be considered a reduction of their salary, for they would receive for their compensation the same amount they had theretofore received.

We conclude that the provision for the deputy is neither an increase of the salary of the officer nor of the deputy during his term of office within the meaning of article XI, section 9, of our constitution prohibiting an increase of salary.

It is suggested that this construction of our constitution brings this opinion in conflict with that just rendered in the case of *Wines* v. *Garrison, ante,* p. 650 [214 Pac. 56], a companion case, for the claimed reason that the conclusion reached is inconsistent not only with the authorities supporting the case of *Wines* v. *Garrison, supra,* but also the theory on which the County Government Act is held to be general and uniform within the meaning of article XI, section 4, of the constitution. The question then is this: Does this construction of the act of the legislature increasing the

salary of the deputy render the Political Code dealing with the subject of county government unconstitutional? This suggestion requires a reconsideration of some of the fundamental principles involved in the question. It was definitely determined in the case of *Tulare County* v. *May,* 118 Cal. 303 [50 Pac. 427], that the system by which in some counties officers were paid in a lump sum and in other counties were paid a certain stipend and were allowed a certain number of deputies to be paid directly from the county treasury, did not destroy the uniformity of county government within the meaning of article XI, section 4, of the constitution. In other words, it was there decided that the legislature could provide both schemes, for the compensation of county officers and their deputies. That conclusion has ever since been adhered to. A contrary conclusion would result in destroying all the county governments in the state by holding that the entire scheme for the payment of all county officers and deputies is unconstitutional and void. Such a result should not be arrived at if by any reasonable course it can be avoided. The doctrine of *stare decisis* furnishes the complete escape from this dilemma. It has been determined that the dual system of fixing salaries does not violate article XI, section 4. This conclusion was not only arrived at after full argument and careful consideration, but in order that the conclusion might be reached, three previous decisions of this court were overruled. We ought not now to say after a lapse of twenty-five years and after a continuous and consistent course of legislative and judicial action, that dissimilarities between the two systems, perhaps now for the first time fully appreciated, require us to reverse the decision in *Tulare County* v. *May, supra,* and to reconsider the authority of that conclusion.

In this connection it is suggested that the lump sum theory of compensation as discussed in *Tulare County* v. *May, supra,* and the corresponding system by which certain deputies were paid directly from the county treasury, were harmonized in the case of *Tulare County* v. *May, supra,* by holding in effect that in either case the entire amount to be paid by the county was fixed by the statute, and, in effect, in both cases payments were made to all officers and deputies from the county treasury.

Consequently, it is now suggested that to hold that the lump sum payable from the county treasury can be increased in one class of counties and not in another class of counties, is inconsistent with the decision in *Tulare County* v. *May, supra,* and those subsequent decisions following that case, including our own decision of the companion case, *Wines* v. *Garrison, supra.* It is true that the conclusion that the salaries of deputies can be increased in one class of counties by payments from the county treasury and that in order to increase the salaries of deputies in other counties, the increase must come from the officer who receives a lump sum from the county, does demonstrate that there is a difference between the two methods of fixing compensation, but the fundamental question is not whether there is a difference between the two systems, for that there is a difference is perfectly clear to us as it was to the authors of the opinion in *Tulare County* v. *May, supra,* but the question is whether the difference, whatever it may be, rises to such proportions as to destroy the uniformity in county government required by the constitution. It was held otherwise in *Tulare County* v. *May, supra.* It was there recognized that there were some differences between the two systems, for instance, it was argued that the systems were not uniform for the reason that in one case the county officer could determine whether or not he would employ a deputy and thus determine whether or not the county would be compelled to pay the amount of that deputy's salary, while in the other class of counties the salary was fixed and certain. It was recognized that in one class of counties the saving resulting from not employing a deputy would inure to the benefit of the county officer and in the other class of counties it would inure to the benefit of the county itself. Notwithstanding this discrepancy between the two plans it was held that the system was, nevertheless, uniform. So here, we clearly recognize that the increase of compensation to the deputy in one case must be paid by the county officer, if necessary, and in the other class, must be paid by the county, but this does not create a greater irregularity than that involved in the proposition just stated.

Moreover, we are not permitted to examine these questions in the light of cold logic and determine by a system of syllogistic reasoning that a scheme may or may not be right or logical, but we are required merely to ascertain whether

or not there is a reasonable doubt as to whether the constitution has been violated by the legislative enactment. If there is such a doubt, that doubt must be resolved in favor of the validity of the statute. To overturn the statute in question would require us not only to entertain a greater doubt than a reasonable one as to the validity of the legislative action but would also require us to reach that degree of certainty which alone justifies the overturning of previous decisions of this court. Both of these considerations would constrain us to sustain the constitutionality of the act so far as its uniformity is concerned, even though we might entertain some doubt upon that question. It should be noted, also, that the doubt expressed is not as to the conclusion reached in *Tulare County* v. *May, supra,* that the act is uniform, but as to the validity of the reasoning by which that conclusion was reached, namely, that the two systems were equal. That is, that the lump sum salary and the salary of the officer plus the deputy's salary were equivalent, and even though we may impeach this reasoning to some extent, it does not require us to set aside the conclusion that the County Government Act as enacted was uniform. As already pointed out, there may be differences and still be uniformity.

We conclude, therefore, that the increase of compensation to a deputy who holds office at the pleasure of his principal is not a violation of article XI, section 9, of the constitution as to him. Second, that the increase of the salary of the deputy is not an increase of the salary of the principal within the meaning of article XI, section 9. Third, under the previous decisions of this court the system by which some officers in some counties are paid a lump sum and others allowed a salary and also deputies and clerks payable from the county treasury is a uniform system, and our present conclusion does not require reconsideration of those cases holding the two systems of payment not to infringe upon the constitutional inhibition against the lack of uniformity in the county government, notwithstanding the fact that the conclusion reached indicates a dissimilarity between the two systems of paying the deputies.

The petition for writ of peremptory mandate will be granted.

Seawell, J., Kerrigan, J., Lennon, J., Myers, J., Waste, J., and Lawlor, J., concurred.